(No. 49921.—

WAYNE LEE THORNTON, Appellee, v. BEN PAUL *et al.*,
Appellants.

*Opinion filed Dec. 4, 1978.—Rehearing denied Jan. 25, 1979.*

138

KLUCZYNSKI, J., took no part.

Howard W. Small, of Hayes & Moore, of Champaign, for appellants.

James Walker, Ltd., of Bloomington, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

The plaintiff, Wayne Lee Thornton, filed an action in the circuit court of McLean County against Ben's Den, Inc., and Ben Paul for personal injuries suffered in the early morning of January 1, 1973, when Ben Paul struck him on the head with a wooden club. The defendants' insurer, Illinois Founders Insurance Company (hereinafter Illinois Founders) refused to defend and a default judgment for $30,000 was entered against the defendants. Sometime prior to the default, the defendants paid Thornton $100 for an agreement that he would not execute against them on any judgment, but would pursue the insurer. After the default, Thornton initiated a garnishment proceeding against the insurer. After the garnishment hearing, Illinois Founders was ordered to pay the $30,000 judgment plus costs. The insurer's attorneys

filed a petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72) in the defendants' names to vacate the default judgment, which was denied. The insurer appealed from the garnishment order, the defendants appealed from the denial of the petition to vacate, and both were consolidated in the appellate court. The appellate court affirmed the decisions of the circuit court (51 Ill. App. 3d 337), and we granted leave to appeal.

The basic issue is whether Illinois Founders is estopped from raising lack of coverage on the claim in the garnishment proceeding because of its failure to defend the lawsuit.

The plaintiff and several friends were drinking in Ben's Den, in Bloomington, in the early morning hours of January 1, 1973. Ben Paul, president of Ben's Den, Inc., told Thornton several times to quiet down. When Thornton persisted in scuffling with his friends and refused to leave, Ben Paul struck him on the forehead with a wooden club, causing a severe laceration from his hairline to just above his eyebrow. Paul was criminally charged with aggravated battery. When the case was set for trial on January 17, 1973, another count charging battery was added and he was found guilty of battery after a bench trial on stipulated facts. On August 7, 1973, the plaintiff filed a two-count complaint with a jury demand, charging the defendants with wilful and wanton misconduct and seeking $14,000 in compensatory and punitive damages.

At the time of the occurrence, the defendants had a liability insurance policy with Illinois Founders which provided that the company will pay all sums which the insureds shall become legally obligated to pay as damages for personal injuries caused by an occurrence arising out of the ownership, maintenance or use of the insured premises and provided further that the company would defend any such suit against the insureds. In addition to the standard

policy exclusions, the policy had an appended endorsement which stated:

"EXCLUSION OF ASSAULT AND BATTERY
It is agreed that the insurance does not apply to Bodily Injury or Property Damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such assault and battery."

After receiving a copy of the complaint and a request to defend, Illinois Founders sent the defendants a notice that it was reserving its rights. The insurer then retained counsel to investigate the incident underlying the suit. This investigation showed that the occurrence was in fact a battery by the defendant Paul. After receiving this report, `Illinois Founders notified the defendants and their personal attorney that it was denying coverage since assault and battery were excluded. On September 24, 1973, defendants' personal attorney formally entered his appearance for the defendants. An answer and affirmative defense were filed.

On November 12, 1973, plaintiff's attorney and defendants' attorney took discovery depositions of Thornton and Ben Paul in which the deponents gave their respective versions of the incident. According to Thornton, he had worked at an automobile dealership as a truck salesman until 6 p.m., Saturday, December 31, 1972. At 8 p.m., Thornton and his wife attended a New Year's Eve party at the home of his general manager. He stayed at the party for approximately 5½ hours and consumed seven or eight drinks consisting of whiskey and coke. At 1:30 a.m., he left the party, took his wife home and proceeded to Ben's Den, where he met several friends and business acquaintances. During his stay at Ben's Den, Thornton consumed two or three beers and spent some time playing pool and watching others play. After he had been at the pool table for a short time, Ben Paul walked back and

asked him and his friends to quiet down since they were too noisy. Thornton stated that he later walked up to the bar with his friends and talked for 20 to 30 minutes. When a person next to him slumped forward on the bar and knocked over some drinks, Ben Paul approached and asked Thornton to leave. Thornton then told Paul he would leave when his friends left, to which Paul answered, "You are going to leave now." Paul then walked out from behind the bar, Thornton turned around, and Paul struck him on the head with a wooden object, similar to a pool cue, which was about three feet long.

According to Ben Paul, Thornton had made a nuisance of himself the entire time he was there and despite repeated warnings, refused to quiet down or leave when asked. Upon Thornton's arrival, he had a beer and then went over by the pool table. Several minutes later, he became rowdy and began staggering and falling into people. When several customers complained of Thornton's conduct, Paul walked up to him and told him "to be quiet and behave if he wanted to stay." Thornton replied that he wouldn't leave and Paul then returned behind the bar. About 10 minutes later, a "bouncer" told Thornton to be quiet or he would be thrown out, to which Thornton replied, "Don't try it, I will resist." It appears that Paul warned Thornton to stop disturbing people at least two more times, both at the pool table and near the bar. Finally, while behind the bar, Paul told him to leave. Thornton refused, and Paul walked around the bar and told him to get out the door. Thornton said he wouldn't leave. When his friends tried to hold him back, Thornton broke away from them and took a swing at Paul's head. Paul avoided the blow by ducking and then hit Thornton on the forehead with a wooden club which he described as a cut-off cane, approximately 1½ feet long and 2 to 3 inches in diameter.

During the course of Paul's deposition, the plaintiff's

attorney was shown a copy of Illinois Founders letter to the defendants notifying them that it would not defend the suit since the occurrence fell within the assault and battery exclusion. When questioned by plaintiff's attorney, Paul stated that he had no insurance coverage for the incident: "I have an insurance policy but it doesn't cover this."

On July 24, 1974, plaintiff's attorney, with leave of court, filed an amended complaint against the defendants alleging that while the plaintiff was on the premises using ordinary care, "Defendant negligently struck Plaintiff on the head." The amended complaint sought $30,000 damages. The plaintiff filed a jury waiver and served notice on defendants' attorney. An order was entered directing defendants to answer within 21 days.

On July 29, 1974, the defendants' personal attorney demanded that Illinois Founders defend the defendants on the amended complaint. In a letter dated August 19, 1974, Illinois Founders notified defendants' attorney that it would not defend the action, since its previous investigation had shown that the occurrence was outside coverage and no new facts indicated otherwise. This letter was shown to plaintiff's attorney.

At some time between July 24, 1974, and March 16, 1975, the plaintiff and the defendants entered into an agreement, wherein plaintiff agreed to settle his right to pursue Ben Paul and Ben's Den, Inc., for any portion of a judgment which may be rendered, for the sum of $100. The agreement further provided:

> "This agreement is not a release of Plaintiff's cause of action for his injury nor a satisfaction of any judgment which might be rendered, but is merely an agreement limiting the source of collection of any judgment which might be rendered, it being the intention of the parties that Plaintiff is free to pursue his suit to a judgment and to collect that judgment from Illinois Founders Insurance Company in any manner possible."

This agreement was not disclosed to the court or to the defendants' insurer. Illinois Founders learned of its existence for the first time when taking depositions in October 1975, more than 7 months after a default judgment had been entered.

After the amended complaint and jury waiver were filed, the defendants did not file a responsive pleading as ordered by the court. On December 23, 1974, the court entered an order reciting that plaintiff had waived his jury demand and directed any defendant desiring a jury trial to file a jury demand on or before January 3, 1975. Defendants failed to demand a jury trial. On January 7, 1975, the trial court set the case for a bench trial on January 28, and ordered the defendants to file an answer by January 21. They failed to do so and on February 7, the court reset the bench trial for March 17, 1975. In a later deposition, defendants' attorney admitted that he had notice of the trial court's order but did not file an answer to the amended complaint because he believed that his clients were fully protected from exposure by the agreement they had entered into with plaintiff.

On March 17, 1975, the case came on for trial. Although defendants' attorney was present in the courtroom when the case was called, he did not answer for the defendants and later stated that he had not been there "in a representative capacity." When the defendants failed to answer the call, the plaintiff's attorney moved for a default judgment. The court allowed the motion and a prove-up hearing was held, after which the court entered judgment for plaintiff in the amount of $30,000, the full amount prayed in the complaint. The trial judge was never notified of the agreement between the parties.

On April 16, 1975, the plaintiff filed an affidavit for garnishment against Illinois Founders alleging that Illinois Founders was indebted to the defendants for the amount of the judgment plus costs. Apparently, this was the first

notice Illinois Founders received of the default judgment. On June 16, 1975, the court held a hearing on the garnishment action and ordered Illinois Founders to pay the plaintiff the amount of the judgment against defendants, plus costs. Illinois Founders filed a notice of appeal from this judgment on July 8, 1975.

On July 2, 1975, the insurer's counsel filed the section 72 petition in the name of the insureds, supported by affidavit, to vacate the default judgment of March 17, 1975. On October 20, 1975, the insurer learned of the nonexecution agreement between plaintiff and defendants while taking depositions of plaintiff's attorney and defendants' private counsel. An amended section 72 petition to vacate was filed November 7, 1975, which further alleged that plaintiff had not filed the amended complaint in good faith. In support of this petition, the discovery depositions of the attorneys were also submitted to the court. On November 25, 1975, the trial court denied the petition to vacate the default judgment and the defendants, by counsel for Illinois Founders, filed a notice of appeal from that order. Defendants' appeal and Illinois Founders' appeal from the garnishment order were consolidated in the appellate court.

As a general rule, the duty of an insurer to defend an action brought against the insured is to be determined solely from the allegations of the complaint. If the complaint alleges facts within or potentially within policy coverage, the insurer is obliged to defend even if the allegations are groundless, false, or fraudulent. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187; 7A J. Appleman, Insurance sec. 4683 (Supp. 1974).) In addition, in Illinois the duty is not annulled by the knowledge of the insurer that the allegations are untrue.

When the insurer wrongfully refuses to defend a complaint which alleges facts within coverage, it is liable to the insured for breach of contract. (G. Couch, Insurance

sec. 51:52 (2d ed. 1965).) The measure of damages for such a breach is generally the amount of the judgment against the insured or of a reasonable settlement, plus any expenses incurred. See *Kinnan v. Charles B. Hurst Co.* (1925), 317 Ill. 251; 44 Am. Jur. 2d *Insurance* sec. 1546, 1547 (1969); Annot., 49 A.L.R.2d 694 (1956); G. Couch, Insurance secs. 51:54 to 51:56 (2d ed. 1965).

Another major effect of the insurer's wrongful failure to defend is to estop the insurer from later raising policy defenses or noncoverage in a subsequent action by the insured or by a judgment creditor in garnishment. *Palmer v. Sunberg* (1966), 71 Ill. App. 2d 22; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184; G. Couch, Insurance secs. 51:66, 51:69 (2d ed. 1965).

Although we acknowledge the validity of the general rules we have just summarized, we hold that under the facts of the present case, it was error, for the reasons later discussed, to prevent the insurer from raising the defense of noncoverage.

Illinois Founders has urged that the nonexecution agreement and the conditions surrounding its execution have insulated it from responsibility for the judgment entered, relying on the recent decision of this court in *Gatto v. Walgreen Drug Co.* (1975), 61 Ill. 2d 513. Although we do not reach the substance of this contention, a few observations concerning the procedural maneuvering by the plaintiff surrounding the execution of the agreement and the use made of it are at this time appropriate. With the exception of the amended complaint, all the facts, depositions and pleadings in the present case clearly indicate that the claim was based on an intentional battery by Ben Paul, not on negligence. It is equally clear that the plaintiff's attorney was well aware that the defendant's act was a battery and that he filed the amended complaint charging negligence solely for the purpose of bringing the action within potential insurance

coverage, thereby intending to obligate the insurer to defend after the insurance company had investigated, learned that the conduct was a battery, and refused. There is no explanation for the procedures followed other than the desire of plaintiff's counsel to maneuver the insurer into a position where it would be obligated to pay the judgment and estopped from raising the defense of noncoverage.

The nonexecution agreement entered into by the plaintiff and defendants is also suspect and further supports the above conclusion. The agreement, which was entered into before the default judgment, had the effect of absolving the defendants from all liability, in return for payment of $100 and the right to pursue the insurer, and obviously encouraged them to take no further action in the case. As defendants' attorney explained in a later deposition, once the agreement was executed, the defendants had no reason to contest the lawsuit. In spite of this, all notices which the court directed plaintiff's counsel to give were served on defendants' personal attorney and not on the insurer or its counsel. Illinois Founders was never given notice of the trial or the default hearing, and was kept completely in the dark until the garnishment proceedings, more than 30 days after the default judgment. In addition, the nonexecution agreement was never disclosed to the trial court and Illinois Founders did not learn of its existence until it took depositions of the attorneys more than 7 months after the default judgment had been entered. In *Carter v. Aetna Casualty & Surety Co.* (8th Cir. 1973), 473 F.2d 1071, 1078, the court described such conduct as "sharp practices," an observation in which we concur. Because of the disposition we make of this case, it is unnecessary to further consider the effect of the nonexecution agreement on Illinois Founders' liability.

It is the plaintiff's position that since the insurer failed to defend a suit brought against the insured, it is estopped

from asserting lack of coverage. Although this may be the general rule, it does not apply under the facts of this case.

The facts in *Casey v. Northwestern Security Insurance Co.* (1971), 260 Ore. 485, 491 P.2d 208, are strikingly similar to those in this case. There, the insured had been charged with and convicted of the criminal offense of assault with a dangerous weapon. Thereafter, he was sued for personal injuries caused by the assault and battery. The insurance company rejected the tendered defense because its policy of insurance excluded coverage of intentionally inflicted injuries. The insured's attorney consulted with the plaintiff's attorney, who then amended the complaint and alleged assault and battery in one count and negligence in another count. The Supreme Court of Oregon held that at the time the plaintiff's complaint was filed, it had been *conclusively* established by the criminal conviction that the insured's conduct was not within the coverage of the policy. Although the court acknowledged the general rule that the insurer owes a duty to defendant if the injured claimant can recover under the allegations of the complaint upon any basis for which the insurer affords coverage, under the facts of that case, the court held the insurer owed no duty to defend. The court held that the insured's conviction *conclusively* established that the injury was intentionally inflicted and was therefore beyond the coverage of the policy.

The Oregon court acknowledged that this conclusion was possible only if it could be said that the finding that the insured was guilty in the criminal proceeding is binding upon the insured in a subsequent civil action by him against his insurer. The court reviewed its previous holding that a judgment of conviction in a criminal case cannot be given in evidence in a civil case to prove the facts upon which it was rendered. The court noted, however, that in other States there was a trend away from this older general rule. The court quoted from Mr. Justice Traynor's opinion

in *Teitelbaum Furs, Inc. v. Dominion Insurance Co.*
(1962), 58 Cal. 2d 601, 606, 375 P.2d 439, 441, 25 Cal.
Rptr. 559, 561:

> " "*** Stability of judgments and expeditious
> trials are served and no injustice done, when
> criminal defendants are estopped from relitigating
> issues determined in conformity with these safe-
> guards [against unjust conviction, including
> requirement of proof beyond a reasonable doubt,
> unanimous verdict, the right to counsel, and a
> record paid for by the State on appeal].' " (260
> Ore. 485, 491, 491 P.2d 208, 211.)

The Oregon court held that when the insurance company
was called upon to defend the civil action it had no duty
to defend because the criminal proceedings had previously
conclusively established facts that would preclude coverage
under the policy of insurance.

In *Hurtt v. Stirone* (1965), 416 Pa. 493, 206 A.2d
624, the Supreme Court of Pennsylvania held in a suit to
recover money paid as a result of extortionate threats that
proof of the defendant's conviction of extortion was
*conclusive* evidence of the fact of extortion and noted the
trend away from prior holdings that proof of criminal
convictions was inadmissible to establish facts in a civil
case.

In *Gould v. Country Mutual Casualty Co.* (1962), 37
Ill. App. 2d 265, the Appellate Court for the Second Dis-
trict had before it the same question considered by the
Oregon court in *Casey.* The insured was sued for the
wrongful death of an individual whom he had shot. He was
found guilty of manslaughter in a criminal proceeding. The
insurance company refused to defend because its policy
excluded coverage for liability arising out of "any criminal,
wilful, deliberate or malicious act." The insured engaged
counsel to defend the civil action and a verdict was
rendered against him. He sought recovery from the

insurance company for the amount of the judgment plus the costs of his defense. The appellate court held that a criminal conviction was not admissible in a civil action to establish the facts upon which it was rendered. The court extensively reviewed the cases on the subject from this and other States and, while concluding that the authorities which had taken a contrary position were quite persuasive, it adhered to what it perceived to be the law of this State.

In *Smith v. Andrews* (1964), 54 Ill. App. 2d 51, the Appellate Court for the Second District again considered the question of the admissibility of a criminal conviction as evidence in a civil proceeding. After discussing *Gould,* the court stated, "We feel that the time has come to relax the rule of exclusion in this State" (*Smith v. Andrews* (1964), 54 Ill. App. 2d 51, 59), and held that a conviction of rape was admissible in a subsequent civil case as *prima facie* evidence that the defendant in the criminal case did, in fact, "commit a forcible rape upon a female." (54 Ill. App. 2d 51, 61.) The court specifically overruled *Gould* to the extent that *Gould* had held that criminal convictions were not admissible in a civil proceeding to prove the facts upon which they were based.

Although the Oregon court in *Casey* and the Pennsylvania court in *Hurtt* held that the criminal conviction conclusively established the facts upon which it was based, the majority of courts which permit the use of criminal convictions as evidence in civil cases appear to hold, as did the appellate court in *Smith v. Andrews,* that the criminal conviction is *prima facie* evidence of the facts. (See Annot., 18 A.L.R.2d 1287, 1301 (1951).) The appellate court in *Smith v. Andrews* did not limit its holding to the admissibility of convictions of felonies only, although in that case the conviction was of a felony. As noted in McCormick, Evidence 740 (2d ed. 1972), a number of courts have limited the admissibility of prior convictions in civil cases to convictions of serious offenses, feeling that

convictions of misdemeanors do not represent sufficiently reliable determinations.

In view of our disposition of the issues in this case, we need not decide whether evidence of convictions of all misdemeanors should be admissible in civil proceedings as *prima facie* evidence of facts upon which they were based.

The defendant here was originally charged with aggravated battery, a Class 3 felony (Ill. Rev. Stat. 1975, ch. 38, par. 12—4), punishable by a possible sentence of 1 to 10 years in the penitentiary (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—1). Before his trial, a second count was added to the criminal complaint charging battery, and the defendant was convicted of that charge. Battery is a Class A misdemeanor (Ill. Rev. Stat. 1975, ch. 38, par. 12—3), with a possible punishment by imprisonment for any term less than one year (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—3). The defendant was represented at all times during the criminal proceedings by an attorney. Since the defendant was charged with a felony and was convicted of a serious misdemeanor, for which he could have been incarcerated for as long as a year, and for which he was in fact fined $500, we think that the proceedings were of sufficiently serious import to lend an air of credibility to the conviction. When we also consider that the defendant had the additional safeguard of representation by counsel, we must conclude that the likelihood of an unjust conviction has been minimized and the defendant's conviction is reliable evidence of the fact that he did in truth commit a battery.

At the garnishment hearing, plaintiff's attorney insisted that whether or not Ben Paul had been convicted of a battery was not relevant and insisted that the only issue was whether the allegations of the amended complaint fell within the coverage afforded by the policy. The court appeared to agree with this contention, although the record of conviction was admitted into evidence and Ben

Paul was permitted to answer certain questions pertaining to his conviction and the assault and battery exclusion in the policy.

Although the duty to defend generally depends upon the allegations of the complaint, this should not have precluded the insurer in this case from proving in the garnishment proceeding that there had been a prior adjudication that the acts alleged in the complaint constitute conduct for which the policy affords no coverage. We later discuss why the insurer is not estopped by its failure to defend from raising this defense. The court in the criminal case adjudicated the conduct of defendant Ben Paul to constitute battery. We noted above the holdings of the Oregon court in *Casey,* and the Pennsylvania court in *Hurtt* that proof of a criminal conviction is conclusive proof of the facts on which it is based. We think the preferred rule is that stated by the Appellate Court for the Second District in *Smith v. Andrews* (1964), 54 Ill. App. 2d 51, which held proof of a conviction to be admissible in a civil case as *prima facie* evidence. We are not concerned here with the effect of a guilty plea. This approach preserves the opportunity to rebut the factual basis of the conviction insofar as those facts are applicable to the civil proceeding. Also, it does not conclusively establish that there was no duty to defend as the Oregon court held in *Casey.* In our case, the evidence of the defendant Paul's conviction of battery should have been admitted in the garnishment proceeding as *prima facie* evidence that his striking of the plaintiff constituted a battery.

We noted earlier that, under the facts of this case, the general rule that the insurer is estopped, because of its failure to defend, from asserting lack of coverage in a garnishment proceeding does not apply. When the defense of the original complaint was tendered to Illinois Founders, it made its investigation, determined that the suit fell within the assault and battery exclusion of the

policy, and declined the tender of the defense. Also, after the filing of the amended complaint, which charged the defendant "negligently struck the plaintiff on the head," the insurer again declined the defense of the case for the same reason. Clearly, if Illinois Founders would have accepted the defense of the amended complaint, there would have been a direct conflict between its interests and those of the defendants. If Illinois Founders would have assumed the defense, it would have had the right to control the defense of the case. Its interest would not necessarily lie in a finding of not guilty, but would have been just as well served by a finding that the defendant was guilty by virtue of having committed a battery upon the plaintiff. In *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, this court noted the serious ethical problem involved in such a situation and held that one attorney should not, in such a case, represent both the insured and the insurer, and that the insured had a right to be represented by counsel of his own choosing. The insured would then have the right to control the defense.

Although the allegations of the complaint determine whether or not the insurer is obligated to provide a defense, when there is a conflict of interests, as in the present case, the insurer should not be obligated or permitted to participate in the defense of the case. Its obligation to provide a defense should be satisfied by reimbursing the insured for the costs of the defense.

In *Williams v. Farmers Mutual of Enumclaw* (1967), 245 Ore. 557, 423 P.2d 518, the insured had pleaded guilty to assault with a dangerous weapon. Later a complaint in a civil case was filed against him by the injured party, charging him with negligent conduct. The insurer declined the defense and a default judgment was taken against the insured. The plaintiff filed suit against the insurance company, which pleaded that the injury arose from an intentional act of the insured which the

policy would not cover. The court stated:

"There may be circumstances in which the obligation to defend should not be imposed upon the insurer in spite of the fact that the complaint alleges facts which, if true, would give rise to coverage. The instant case presents such circumstances. After Farmers was requested to defend the action for negligent injury against Miller, it learned that Miller had been convicted of assault for the same conduct. If Farmers took over the defense under these circumstances, it would be faced with a serious conflict of interests. Its interest would be served and the insured's interest jeopardized by proving that the injury resulted from an intentional act. The bargain to defend should not be construed as obligating the insurer to participate in the lawsuit where there is such a conflict of interests." *Williams v. Farmers Mutual of Enumclaw* (1967), 245 Ore. 557, 560-61, 423 P.2d 518, 519-20.

In *Ferguson v. Birmingham Fire Insurance Co.* (1969), 254 Ore. 496, 460 P.2d 342, the court held that under the allegations of the complaint, the insurer owed the insured a defense, but the insurer's failure to defend would not estop it from claiming, in an action against it by its insured, that the tort was intentional and therefore not within the coverage of the policy. The court adopted the rule that the failure of the insurer to defend its insured estopped the insurer in a subsequent action only if the interests of the insurer and the insured were identical and not conflicting.

In *Glens Falls Insurance Co. v. American Oil Co.* (1969), 254 Md. 120, 254 A.2d 658, the court held that where the insurer refused to defend on the ground that there was no coverage under a liability policy, the insurer was not estopped to raise his defense of noncoverage in a

subsequent action against it. The court stated that to require the insurer to defend under the facts of that case would put the insurer and the insured in the untenable position of attempting to cooperate in the conduct of the litigation when their interests were, in fact, adverse. The court concluded that in such a case, the insurer is relieved of its obligation to defend.

*Burd v. Sussex Mutual Insurance Co.* (1970), 56 N.J. 383, 267 A.2d 7, is another case factually quite similar to the case we are considering. The insured had inflicted gunshot wounds on a third party. The insured's home-owner's policy excluded from liability coverage bodily injury caused intentionally by the insured. The insured was convicted of assault and battery. The injured party filed a civil action in two counts: one count charged intentional injury and the other count charged the insured with negligence. The insurance company declined to defend because the policy excluded intentional injury. The insured defended the case through his own counsel and a judgment was entered against him. The insured brought an action against the insurance company arguing that the company, having foregone the opportunity to defend, was estopped to assert that the injuries were intentionally inflicted. The court held that if the case may be so defended by a carrier as to prejudice the insured thereafter upon the issue of coverage, the carrier should not be permitted to control the defense. The court held that in such circumstances the carrier should not be estopped from disputing coverage because it refused to defend. The court further held, however:

> "This is not to free the carrier from its covenant to defend, but rather to translate its obligation into one to reimburse the insured if it is later adjudged that the claim was one within the policy covenant to pay." *Burd v. Sussex Mutual Insurance Co.* (1970), 56 N.J. 383, 390, 267 A.2d

7, 10.

In *Harbin v. Assurance. Co. of America* (10th Cir. 1962), 308 F.2d 748, the policy of insurance excluded coverage for injury intentionally inflicted. The court stated in a declaratory judgment action that the case placed the insurer in a dilemma of conflicting interests. It cannot possibly defend the action and protect both its interests and the interests of the insureds. The control of the defense by the insurer carries with it the potential of prejudice to the insureds. The court held that it should not force, through a declaratory judgment, the insurer into the conflict of interests position, which will result if defense of the action by the insurer is required.

In *Satterwhite v. Stolz* (1968), 79 N.M. 320, 442 P.2d 810, the Supreme Court of New Mexico, applying Texas law, held that although the insurer was not in a position to undertake the defense of the insured because of the conflict of interests, it, nonetheless, because of its duty under the policy, was obligated to reimburse the insured for the costs of the defense.

*Steel Erection Co. v. Travelers Indemnity Co.* (Tex. Civ. App. 1965), 392 S.W.2d 713, is another case that holds that although the insurer, under the allegations of the pleadings, was obligated to defend, where the insurer declined coverage it was in no position to conduct the defense of the insured. The insured had the right to be defended by an attorney of its own choice and the insurer was liable for the attorney's fee.

Following the rationale of these cases from other jurisdictions, we conclude that because of the conflict of interests and the ethical problems that would have been presented if Illinois Founders would have undertaken the defense of the defendants, the insurer's failure to defend should not estop it from raising the defense of non-coverage in the garnishment action.

In *Sims v. Illinois National Casualty Co.* (1963), 43 Ill.

App. 2d 184, our appellate court held that in case of doubt as to whether or not an insurer must defend, the insurer should defend under a reservation of rights, or seek a declaratory judgment as to its obligation. These suggested remedies do not, in the peculiar factual situation of this case, resolve the dilemma. It is only when the insurer defends under a reservation of rights that the conflict of interests becomes apparent. If the insurer defends without reserving its rights, it waives its policy defenses, and is liable for the judgment whether or not the insured's conduct falls within the coverage of the policy. (See Note, *Liability Insurance Policy Defenses and the Duty To Defend*, 68 Harv. L. Rev. 1436, 1443 (1955).) In a conflict situation such as is presented in this case, defending under a reservation of rights, assuming such a conditional defense is acceptable to the insured, does not solve the ethical question because the insurer's interests would be promoted by a finding that the insured had committed a battery. Since the right to assert policy defenses had been reserved, such a finding would relieve the insurer from its obligation to pay and at the same time impose liability upon the insured.

As to the suggestion of *Sims* that the insurer seek a declaratory judgment as to its obligations, in addition to the undesirability of forcing an insurer into a conflict of interests position through the use of the declaratory judgment action noted in *Harbin v. Assurance Co. of America,* this court stated in *Maryland Casualty Co. v. Peppers* that in situations such as are present in this case, a declaration in a declaratory judgment action whether or not the insured's conduct constituted a battery would be premature. In a declaratory judgment action, injured claimants are proper and necessary parties and the judgment in such an action is binding under the doctrine of collateral estoppel as to the facts determined by the judgment and would preclude parties to the action from

relitigating them. *Williams v. Madison County Mutual Automobile Insurance Co.* (1968), 40 Ill. 2d 404.

In a declaratory judgment action the ultimate question of the insured's liability to the injured party is not the issue before the court. However, if a court were to determine in a declaratory judgment action that the insured's conduct did not come within the coverage of the policy because it constituted a battery, this declaration would be binding on the insured in the personal injury action between the injured party and the insured, and would in all probability be determinative of the issue of liability in that suit. In *Great American Insurance Co. v. Ratliff* (E.D. Ark. 1965), 242 F. Supp. 983, in a declaratory judgment action brought by an insurance carrier following a judgment against the insured in a State court personal injury case, the court stated:

> "In many instances it is more orderly and efficient and is in the best interests of all parties concerned to have the question of coverage litigated in advance of the trial of the basic controversy between the insured and the injured party. However, the question of coverage need not necessarily be determined in advance of determination of the basic controversy, and the Court is of the opinion that advance determination of the matter of coverage is not desirable where, as here, that question is closely and directly connected with the issue of the insured's personal liability to the injured party." *Great American Insurance Co. v. Ratliff* (E.D. Ark. 1965), 242 F. Supp. 983, 990.

*Green v. Aetna Insurance Co.* (5th Cir. 1965), 349 F.2d 919, involved a declaratory judgment action in the Federal court *before* judgment was entered in a suit against the insured in a State court. The United States District Court for the Northern District of Texas entered a

judgment declaring the insurer not obligated to defend the damage suit or to pay any judgment entered thereon. The court of appeals reversed and remanded, and stated:

> "Nor, on remand, do we think it appropriate for the Federal Court to hear this part of the claim in advance of the State Court trial. \*\*\* But here it is quite possible that the Assured may be held liable. Whether insurance is available depends on the nature of any such imposed liability. To determine that, means a full trial of the damage claim on the merits.
>
> A moment's reflection will demonstrate that the trial of the merits of the underlying damage claim should be held in the State Court, not in the Federal Court as a prelude to negative potential liability." (*Green v. Aetna Insurance Co.* (5th Cir. 1965), 349 F.2d 919, 926-27.)

In a Note, *Use Of The Declaratory Judgment To Determine A Liability Insurer's Duty To Defend—Conflict of Interests*, 41 Ind. L.J. 87 (1965), the author discusses the use of a declaratory judgment action to determine the duty to defend in cases where the factual issues determining the insured's tort liability are the same issues upon which the insurer bases its claim of noncoverage. The author makes these observations concerning the problems of the injured party when he is joined in and bound by the judgment in such an action:

> "Requiring the injured party to appear in the declaratory judgment action between the insurer and the insured may deprive the injured party of his choice of forum and time for bringing suit. Furthermore, he would appear as a defendant rather than as a plaintiff, which may alter the burdens of proof and going forward with evidence. For these reasons, it is submitted that the issue should not be tried in the declaratory judgment action." 41 Ind. L.J. 87, 101.

We conclude, as this court did in *Maryland Casualty*

*Co. v. Peppers,* and as the author cited above also concluded, that it would not be appropriate, under the facts of this case, for the insurer to seek a declaratory judgment that the insured's conduct constituted a battery and was thus beyond the coverage of the insurance policy. In such a proceeding, an issue crucial to the insured's liability in the personal injury action and also one on which punitive damages could ultimately be assessed would be determined in a purely ancillary proceeding with the plaintiff and defendant in the personal injury action both aligned on the same side as defendants in the declaratory judgment action. Also, the order and burden of proof would be oriented to and dictated by the declaratory judgment action and not by the primary litigation, the personal injury suit.

It thus appears that in cases involving the conflicting interests present in the case before us, the suggestions of *Sims v. Illinois National Casualty Co.* (1963), 63 Ill. App. 2d 184, 199, that in case of doubt the insurer can seek a declaratory judgment as to its obligations and rights, or defend on a reservation of rights, are not available. Our holding in this case is not a repudiation of the holding of *Sims,* but is a narrow exception to that holding applicable only under conditions such as are presented in the present case.

We have earlier considered the question of estoppel which results from the insurer's breach of its contractual duty to defend. There is another aspect of estoppel to consider quite apart from the estoppel imposed by case law as a result of violation of the insurance carrier of its contractual duty under a policy of insurance to defend. We must also consider the collateral estoppel effect of the judgment entered against the defendant in favor of the plaintiff.

In this case, it must be remembered no answer was filed to the amended complaint and a default judgment

was entered in favor of the plaintiff and against the defendants followed by a prove-up of damages. No issue was raised, no proof was offered, and no determination was made as to whether the defendant's conduct constituted negligence or a battery. The allegation of the amended complaint was that the defendant Paul "negligently struck plaintiff on the head." The failure to respond to an allegation constitutes an admission of all facts well pleaded by the adversary. (*Roth v. Roth* (1970), 45 Ill. 2d 19, 23; *Mooney v. Underwriters at Lloyd's, London* (1965), 33 Ill. 2d 566, 570.) A failure to answer, however, does not constitute an admission of the conclusion of the pleader. *Reinhardt v. Security Insurance Co.* (1941), 312 Ill. App. 1.

While the failure of the defendants to respond to the allegations of the amended complaint admitted that defendant Paul had struck the plaintiff on the head, it did not admit the conclusions that the conduct constituted negligence (*Clay v. Chicago Board of Education* (1974), 22 Ill. App. 3d 437). No judgment has been made whether the defendant Paul's conduct constituted a negligent act or a battery, and the principle of collateral estoppel will not prevent the insurer from raising defendant's conduct as a defense in the garnishment proceedings. See Restatement of Judgments secs. 68, 107 (1942); *Great American Insurance Co. v. Ratliff* (E.D. Ark. 1965), 242 F. Supp. 983; *Williams v. Farmers Mutual of Enumclaw* (1967), 245 Ore. 557, 562, 423 P.2d 518, 520.

The abbreviated allegations of the amended complaint warrant further discussion. This pleading is in two almost identical counts: one against the defendant Ben Paul, and the other against the defendant Ben's Den, Inc. The count against Ben Paul alleges:

> "1. On January 1, 1973, Plaintiff was on the premises known as Ben's Den, located at 111 West Monroe, Bloomington, Illinois.

2. Plaintiff was using ordinary care for his own safety.

3. Defendant negligently struck Plaintiff on the head.

4. Plaintiff was injured.

5. The negligence of Defendant was a proximate cause of Plaintiff's injury."

The brevity of these allegations amounts to no more than notice pleading. Whatever may be said of the merits of such a complaint, it must be admitted that it is hardly sufficient from which to determine the respective rights and duties of the insurer and the insured insofar as the duty to defendant and the right to control the defense of litigation is concerned. Since this duty and this right are determined by the factual allegations of the complaint, the allegations of fact should be sufficient to enable the insured to determine whether he is entitled to a defense from the insurer or whether he should engage private counsel. The difficulty in applying the general rule and determining the duty to defend in the absence of a more detailed factual allegation, or when a complaint constitutes no more than notice to the defendant, is noted in Comment, *The Insurer's Duty To Defend Under A Liability Insurance Policy*, 114 U. Pa. L. Rev. 734, 734-35 (1966). In *Ross Island Sand & Gravel Co. v. General Insurance Co. of America* (9th Cir. 1973), 472 F.2d 750, the court, in speaking of the general allegations in pleadings under Federal practice, stated:

"In such a pleading environment, a complaint may or may not provide an insurance carrier with enough information to permit an informed judgment on whether or not he must defend." (*Ross Island Sand & Gravel Co. v. General Insurance Co. of America* (9th Cir. 1973), 472 F.2d 750, 752.)

See also *Kepner v. Western Fire Insurance Co.* (1973), 109 Ariz. 329, 509 P.2d 722, where the court discussed the difficulty in applying the general rule to the allegations of

notice pleading.

Recently, this court reaffirmed its adherence to the general rule and stated:

"If the complaint alleges facts within the coverage of the policy or potentially within the coverage of the policy the duty to defend has been established." (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193.)

However, if the general rule is to be applied, there should be sufficient factual allegations in the complaint to make the determination alluded to in *Maryland Casualty Co. v. Peppers*. Illinois Founders does not raise the question of the sufficiency of the allegations of the amended complaint to impose upon it the duty to provide a defense, and we need not here further consider the brevity of the allegations.

In conclusion, we hold that Illinois Founders was obligated to provide a defense of the amended complaint to the insureds and that this obligation must be satisfied by reimbursing the insureds for the costs thereof. However, because of the conflicting interests of the insurer and the insureds, the failure of Illinois Founders to participate in the defense of the case does not estop it from raising, in the garnishment proceeding, the defense of noncoverage that the defendant Paul's conduct constituted a battery. Also, the default judgment against the defendants in favor of the plaintiff does not collaterally estop Illinois Founders from asserting in the garnishment proceedings that defendant Paul's conduct constituted a battery. We further hold that the evidence of the defendant Paul's conviction of battery is admissible in the garnishment proceedings as *prima facie* evidence that his conduct did constitute a battery on the plaintiff. It is apparent that at the garnishment hearing, the plaintiff tried his case on the assumption that Illinois Founders was estopped from raising the defense of noncoverage by its failure to defend

the insureds. It is also apparent from the record that the trial court took a similar position. For this reason, the judgment of the appellate court is reversed and the cause is remanded to the circuit court for further proceedings, in accord with the opinions expressed herein.

Insofar as the defendants' appeal from the denial of their petition to vacate the default judgment is concerned, while the petition and supporting documents set forth the maneuvering referred to herein, they failed to allege fraud or other grounds necessary to vacate a judgment under section 72, and the court made no such finding that would authorize a vacation of the judgment. The defendants were fully represented by counsel at all times prior to and including the entry of the default judgment. We find it unnecessary to give further consideration to the motion to vacate.

Accordingly, the judgments of the appellate and circuit courts as to the garnishment proceeding are reversed, and the cause is remanded to the circuit court of McLean County for further proceedings. The judgments of the appellate and circuit courts as to the section 72 motion to vacate are affirmed.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part; cause remanded.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.