ROCKFORD MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. JESSE SHATTUCK *et al.*, Defendants-Appellants.

Second District    No. 2—89—0042

Opinion filed September 28, 1989.—Rehearing denied October 27, 1989.

Brassfield, Cowan & Howard, of Rockford (Eugene E. Brassfield, of counsel), for appellants.

Brittain, Ketcham, Strass, Terlizzi, Flanagan, Weir & Johnson, P.C., of Elgin, and Peter T. Sullivan III, of Sreenan, Cain & Sullivan, P.C., of Rockford (Lewis W. Terlizzi and Daniel E. Compton, of counsel), for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendants, Jesse Shattuck, individually, and Jesse Shattuck, as administrator of the estate of Kimberly Shattuck, deceased, appeal from the order of the circuit court of Winnebago County. The court entered judgment in favor of plaintiff, Rockford Mutual Insurance Company (Rockford), on its complaint for declaratory relief. The court found that Rockford was not liable under its policy of insurance. We affirm.

On March 30, 1987, Paul Bouchard was convicted of the murder of Kimberly Shattuck. Bouchard was found guilty but mentally ill. Subsequently, Jesse Shattuck, husband of the decedent, filed a complaint pursuant to the Wrongful Death Act (Ill. Rev. Stat. 1987, ch. 70, pars. 1, 2) and the Survival Act (Ill. Rev. Stat. 1987, ch. 110½, par. 27—6). On May 23, 1988, judgment was entered in favor of Jesse Shattuck, administrator of the estate of Kimberly Shattuck, and against Paul Bouchard in the amount of $451,456.60. Rockford filed a complaint for declaratory judgment seeking a finding that it was not obligated to pay any portion of the judgment.

It was stipulated that Bouchard was insured under a homeowner's insurance policy issued by Rockford. The policy in question contained the following language:

"We will pay on behalf of an **Insured** for damages resulting from **bodily injury** or **property damage** caused by an **occurrence**, if the **Insured** is legally obligated."

"**Occurrence** in Section II—Liability Coverage, means an accident, including continuous or repeated exposure to conditions, which results in **bodily injury** or **property damage**."

"Liability Medical Payments and Moral Obligation (Coverages W, Y and Z) do not apply to **bodily injury** or **property damage:**

1. caused *intentionally* [emphasis added] by or at the direction of an **Insured**."

At trial, Rockford offered into evidence a certificate of conviction es-

tablishing that Bouchard had been found guilty of murder and, also, that he was mentally ill at the time of the offense. It was stipulated that Bouchard was represented by counsel in the criminal case and that Bouchard presented a defense of insanity. Rockford rested after presentation of this evidence. Defendants presented testimony from three witnesses: Dr. Anthony D'Souza, a psychiatrist; Dr. Frank Cushing, a clinical psychologist; and Paul Bouchard. Both Dr. D'Souza and Dr. Cushing had testified at Bouchard's criminal trial in support of his insanity defense. They were of the opinion that Bouchard suffered from paranoid schizophrenia. Each doctor testified that Bouchard's mental disease rendered him incapable of appreciating or understanding his conduct at the time of the stabbing. Additionally, they both opined that Bouchard could not have formed the intent to bodily injure or kill Kimberly Shattuck due to this mental disease.

Bouchard also testified at trial. He testified that he heard "little voices" and that these voices told him to kill. He also provided a rather detailed account of the events of September 3, 1986. Bouchard stated that he heard the voices telling him to kill Kimberly Shattuck while at school. When he got home from school, he took a survival knife out of a drawer and placed it in a knapsack. He testified that he took the knife because he wanted to kill. Bouchard then phoned his employer to inform him that he was sick and would not be going to work that afternoon. Bouchard testified that he got out of work so he could go out and kill. He then went to the Shattuck residence, entered through an unlocked door and wandered throughout the house. There was no one home at the time. Bouchard heard a car enter the driveway, and he hid in the bathroom. He heard Kimberly and Tracy Shattuck talking in the house. When Tracy left, and Kimberly entered the bedroom, Bouchard jumped out of the bathroom and stabbed Kimberly. Bouchard testified that he only remembered stabbing Kimberly three times. In fact, he stabbed her more than 50 times. He then told Kimberly he was sorry. He did this because he realized what he had done.

Bouchard then fled and encountered a woman in an alley behind a Kwik-Buy store. He told the woman that he had been in a fight and asked for a towel to clean the blood from his hands, arms and face. He then entered the store, went into the rest room and washed up. He took off the clothes he was wearing and discarded them along with the knife in a wastebasket. He put on a pair of jeans that he had in the knapsack and left the store.

When he returned home, he changed clothes and went to work. At work he encountered Tracy Shattuck, also an employee. He ex-

changed greetings with her and may have told her that he had been to her house. He stayed at work briefly, told the manager that he was sick and returned home. He placed his bloodstained shoes in the basement and took a shower. Later that evening, the police escorted Bouchard to the police station for questioning. He did not admit involvement in the crime.

The court, sitting without a jury, found that Bouchard's conviction of murder was *prima facie*, but not conclusive, evidence of the facts upon which the conviction was based. The court, after considering all the evidence, found that defendants' evidence had not rebutted plaintiff's *prima facie* case. The court, using a subjective test, found that Bouchard was not insane at the time of the offense but mentally ill. Therefore, he was able to appreciate the wrongful nature of his acts and conform his conduct to the requirements of the law. The court concluded that the murder of Kimberly Shattuck was an intentional act and, therefore, Rockford was not liable under its policy of insurance. Defendants appeal these findings.

■ A court's findings in a bench trial will not be disturbed unless they are manifestly against the weight of the evidence. (*Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 110; *Merchants National Bank v. The Old Second National Bank* (1987), 164 Ill. App. 3d 11, 13.) The court below provided this court with clear and concise statements of its findings. For the reasons set forth below, we find that the court's findings are not against the manifest weight of the evidence.

■ ■ Proof of a criminal conviction is admissible in a civil case as *prima facie* evidence of the facts upon which the conviction was based. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 151; *Aetna Casualty & Surety Co. v. Dichtl* (1979), 78 Ill. App. 3d 970, 978.) The statute under which Bouchard was convicted states:

> "A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:
>
> (1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or
>
> (2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another ***."

(Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(2).)

Intent is defined by statute as follows:

> "A person intends, or acts intentionally or with intent, to accomplish a result or engage in conduct described by the statute defining the offense, when his conscious objective or purpose is

to accomplish that result or engage in that conduct." (Ill. Rev. Stat. 1987, ch. 38, par. 4—4.)

Therefore, by introducing the certificate of conviction, plaintiff has established a *prima facie* case that Bouchard's acts were intentional.

Defendants contend that the certificate of conviction entered into evidence amounted to a rebuttable presumption that Bouchard's acts were intentional. Defendants assert that once they presented the testimony of Dr. D'Souza, Dr. Cushing, and Bouchard, this presumption was rebutted and disappeared. Thus, the only evidence left for the court to consider was the uncontradicted testimony of the witnesses who testified that Bouchard could not have intended his actions.

■ The flaw in defendants' argument is that they equate a *prima facie* case with a rebuttable presumption. Defendants cite no authority for this contention. A rebuttable presumption *may* create a *prima facie* case as to a particular issue in question. (*Diederich v. Walters* (1976), 65 Ill. 2d 95, 100.)

> " 'A presumption is not evidence and cannot be treated as evidence. \*\*\* They are indulged in only to supply the place of facts.' " *Diederich*, 65 Ill. 2d at 102, quoting *Coal Creek Drainage & Levee District v. Sanitary District* (1929), 336 Ill. 11, 31.

■ Contrary to defendants' contentions, the fact that defendants placed into evidence testimony that rebutted plaintiff's *prima facie* case does not cause the *prima facie* case to disappear as it would a rebuttable presumption. It simply raises a question of fact to be resolved by the trier of fact. Even when a presumption does arise and is rebutted, a factual question remains. (See *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 456.) The trial court correctly noted that the criminal conviction established a *prima facie* case that Bouchard's actions were intentional.

This *prima facie* evidence is clearly sufficient to support the finding that Bouchard acted intentionally. Additionally, Bouchard testified that he excused himself from work so that he could go out and kill Kimberly Shattuck. Bouchard testified that his purpose in going to the Shattuck residence was to kill. He testified to the steps he took prior to the stabbing and his actions after the incident. He discarded his clothes and the murder weapon to avoid detection. This testimony and the *prima facie* case established by the certificate of conviction form a sufficient basis upon which the court could have concluded that Bouchard's conscious objective or purpose was to stab and kill Kimberly Shattuck.

■ The defendants recount in detail the expert testimony of Dr.

D'Souza and Dr. Cushing. Both of these experts stated the opinion that Bouchard could not have formed the intent to stab Kimberly Shattuck. Therefore, defendants conclude that the court could not find that Bouchard acted intentionally. A trier of fact, in this case the court, is *not* required to accept the ultimate opinion of an expert. (*People v. Palmer* (1985), 139 Ill. App. 3d 966, 974; *People v. Ware* (1980), 88 Ill. App. 3d 115, 119.) The court found that the testimonial evidence presented by defendants did not overcome plaintiff's *prima facie* case that Bouchard acted intentionally. The court, correctly using a subjective test (see *Dichtl*, 78 Ill. App. 3d at 976), found that Bouchard acted intentionally. This decision was clearly not against the manifest weight of the evidence. Therefore, the exclusionary clause in the insurance policy is effective, and the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

UNVERZAGT, P.J., and LINDBERG, J., concur.