WESTERN STATES INSURANCE COMPANY, Plaintiff-Appellant, v. KELLEY-WILLIAMSON COMPANY *et al.*, Defendants-Appellees.

Second District   No. 2—90—1023

Opinion filed April 4, 1991.

8

Kevin J. Luther and Douglas J. Pomatto, both of Heyl, Royster, Voelker & Allen, of Rockford, and Karen L. Kendall, of Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

Robert A. Fredrickson, of Reno, Zahm, Folgate, Lindberg & Powell, of Rockford, and Robert K. Slattery, of Freeport, for appellees.

JUSTICE McLAREN delivered the opinion of the court:

Plaintiff, Western States Insurance Company, appeals from an order of the trial court dismissing its complaint for declaratory judgment and finding plaintiff is required to provide coverage to defendant, David Derwent, under its insurance agreement. Plaintiff

contends the court erred by finding the policy exclusion concerning intentional acts did not apply. We affirm.

Plaintiff and defendant had entered into an insurance agreement, and this agreement was in effect at all relevant times. On July 19, 1988, defendant drove his automobile into a gas station owned by co-defendant, Kelley-Williamson Company (Kelley). Kelley filed suit against Derwent seeking damages as a result of the collision. Plaintiff filed a declaratory judgment action against both defendants, alleging plaintiff was not liable to defend Derwent or pay any judgment award under its insurance agreement as the insurance policy excluded coverage for intentional acts, and Derwent intentionally drove into Kelley's building. Defendants claimed Derwent was insane at the time of the accident and could not have acted intentionally.

The court conducted a bench trial on July 17, 1990. Plaintiff submitted, and defendants stipulated to, the policy of insurance which included the provision excluding coverage for intentionally caused bodily injury or property damage. Defendants also stipulated to the admission of a transcript of a 1989 criminal proceeding against Derwent for criminal damage to property (Ill. Rev. Stat. 1987, ch. 38, par. 21—1(a)) arising out of the same occurrence. Lastly, defendants stipulated to the admission of a certified copy of the judgment order entered in the criminal case. The order revealed Derwent was found guilty but mentally ill of the offense charged and sentenced to 30 months' probation.

Derwent also testified during the plaintiff's case in chief as an adverse witness. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—1102.) Derwent stated he drove his pickup truck into the gas station intending to commit suicide. Derwent also stated he knew he would damage the station by driving into it. Plaintiff rested its case after Derwent's testimony.

Derwent then testified on his own behalf and recounted the events surrounding July 19, 1988. On July 17, Derwent gave a co-worker some flowers. She responded with a note stating she was not interested as she was living with someone at the time. Derwent testified he then thought the woman was constantly screaming and yelling at him. He also believed other co-workers were saying terrible things about him.

Derwent further testified that, at approximately 3:30 p.m. on July 17, he packed his clothes in plastic trash bags, put them in the back of his truck and drove off. He did this because he thought everyone was against him and he had to escape from Freeport, Illinois, his place of residence. He intended to go to Kansas. Derwent heard

voices speaking to him through his radio. The voices were calling him a sinner. He also heard voices coming through the air-conditioning ducts at a motel he stayed in that night. Derwent thought he would be killed if he returned to Illinois or continued to Kansas.

Derwent testified he turned back on July 18 intending to return home. He arrived in Cedarville, Illinois, at approximately 1 a.m. on July 19 and pulled into a parking lot.

Derwent testified he remained in the parking lot for approximately one hour. He determined that, instead of trying to escape, he would drive into the gas station and commit suicide. Derwent saw lights approaching, and he panicked. He drove into the building at a high rate of speed. Derwent testified he had never been treated for mental problems prior to the incident, but he has continued to hear voices since this incident.

Mr. Hugh Knapp, vice-president of operations at Jane Addams Community Mental Health Center, also testified. Knapp interviewed Derwent at approximately 3 a.m. on July 19. Knapp diagnosed Derwent as suffering from a psychotic disorder. In Knapp's opinion, Derwent was mentally ill and incapable of making appropriate decisions or governing his conduct with good reason. Knapp did not believe Derwent had the mental capacity to form a rational intent.

Dr. Kamal Modir, a psychiatrist, also testified. Dr. Modir first met with Derwent in August 1988 at Jane Addams Mental Health Center. Dr. Modir diagnosed Derwent as suffering from schizophrenia, a psychotic disorder in which a person loses rational thinking and becomes delusional. Dr. Modir testified he considers Derwent to have been insane at the time Derwent drove into the building.

On cross-examination, Dr. Modir opined Derwent intended to drive his truck into the building and commit suicide.

Defendant also submitted the records of Singer Mental Health Center and Jane Addams Mental Health Center into evidence.

The trial court found Derwent was clinically and legally insane at the time of the occurrence and thereby incapable of forming the necessary intent required under the policy. The court determined plaintiff was required to provide Derwent with a defense in the suit filed by Kelley and all other benefits under the policy. Plaintiff timely appeals from this decision.

A court's findings in a bench trial will not be disturbed upon review unless they are manifestly against the weight of the evidence. (*Greene v. City of Chicago* (1978), 73 Ill. 2d 100, 110.) The trial court has provided this court with clear and complete statements of its find-

ings. For the reasons set forth below, we determine the trial court's findings are not against the manifest weight of the evidence.

Plaintiff first argues the trial court erred by failing to recognize the significance of defendant's criminal conviction to the case at bar. Plaintiff contends the trial court did not consider the criminal conviction as *prima facie* evidence defendant's acts were intentional.

■■ ■ It is established that proof of a criminal conviction is admissible in a civil case as *prima facie* evidence of the facts upon which the conviction was based. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 151; *Rockford Mutual Insurance Co. v. Shattuck* (1989), 188 Ill. App. 3d 787, 790.) The facts upon which Derwent's conviction was based were established by stipulation. One such stipulated fact indicated Derwent drove into the station intentionally. Therefore, the certified copy of Derwent's criminal conviction constituted *prima facie* evidence that Derwent's actions were intentional.

The trial court, in paragraph 18 of its judgment order, discussed the *prima facie* case established by the conviction and stated, "[s]uch *prima facie* case, however, and any admissions made by Derwent's attorney in order to procure the acceptance of what amounted to a plea bargain, this court finds are overwhelmingly overcome by the evidence produced in this case and the findings heretofore made." We determine the above language, within the context of a review of all the evidence contained in the record, indicates the trial court correctly considered the criminal conviction as *prima facie* evidence of the facts underlying the conviction.

Plaintiff also contends Derwent's stipulations in the criminal proceeding constitute judicial admissions which cannot be controverted in this civil proceeding. Plaintiff cites *Batterton v. Thurman* (1982), 105 Ill. App. 3d 798, in support of this contention. In *Batterton*, the defendant stipulated to certain facts in a battery prosecution. The defendant admitted facts necessary to sustain a criminal battery charge, namely, that he struck the plaintiff and injured him. The defendant did not plead guilty but, based upon the stipulated facts, an order of supervision was entered. Thereafter, an order of expungement was entered which impounded the court record. In the subsequent tort action, the plaintiff called the judge in the criminal proceeding to testify as to the stipulations the judge had recorded on the docket sheet. The court found this testimony to be admissible in the civil suit because, in the criminal case, defendant "made a binding admission to the fact he struck plaintiff and injured him." *Batterton*, 105 Ill. App. 3d at 802.

■■ ■ We note that the court in *Batterton* found the stipulated facts in the criminal proceeding to be *admissible* in the subsequent tort suit. The court did not find the stipulations to be conclusive evidence of the battery. Although a judicial admission is binding upon the party making it and cannot be controverted (*Rosbottom v. Hensley* (1965), 61 Ill. App. 2d 198, 215), it is only a judicial admission in the proceeding in which it was made, and, in a subsequent case, it becomes an ordinary evidentiary admission which is not binding on the party who made it. (See *Goodwin v. ITT Commercial Finance Corp.* (1986), 146 Ill. App. 3d 810, 813-14 (a verified pleading is a judicial admission in the case in which it is filed but not in a subsequent case).) These prior admissions are admissible in later actions but may be explained or controverted. (*Goodwin*, 146 Ill. App. 3d at 814.) The trial court was correct in viewing the stipulated facts in the prior criminal proceeding as not being conclusive or binding on defendant.

Lastly, plaintiff argues the trial court erred in finding Derwent did not intend to cause damage to the gas station and in determining the exclusionary clause contained in the insurance policy did not apply.

■ In *Aetna Casualty & Surety Co. v. Dichtl* (1979), 78 Ill. App. 3d 970, this court stated:

> "While acts performed by an insane person do not relieve that person from civil liability for the consequences of their actions [citation], a different rule is applied when considering whether such actions are 'intentional' within the meaning of an exclusionary provision in an insurance policy. The majority view is that the insured must have the mental capacity to form the requisite intent at the time that the injury is inflicted." (*Dichtl*, 78 Ill. App. 3d at 975.)

Intent, as it applies to an exclusionary clause in an insurance policy, means the actor desires to cause the consequences of his action or believes the consequences are substantially certain to result from it. *Aetna Casualty & Surety Co. v. Freyer* (1980), 89 Ill. App. 3d 617, 620.

■ Plaintiff also cites a Virginia Supreme Court case and claims the trial court erred by failing to take into consideration the degree of mental illness suffered by Derwent when determining if he intended to damage the gas station. (See *Johnson v. Insurance Co. of North America* (1986), 232 Va. 340, 350 S.E.2d 616.) Plaintiff is correct in that a subjective standard is applied when determining intent as it applies to an exclusionary clause in an insurance policy. (See *Dichtl*, 78 Ill. App. 3d at 977-78.) Each case should be reviewed to determine the

extent of the particular party's incapacitation as it relates to his ability to form intent. (See *Badger Mutual Insurance Co. v. Murry* (1977), 54 Ill. App. 3d 459; *Mid American Fire & Marine Insurance Co. v. Smith* (1982), 109 Ill. App. 3d 1121.) However, this is a factual question to be resolved by the trier of fact.

■■ In the case at bar, the trial court found "Derwent was incapable of exercising free will at the time which is an essential element of specific intent." Additionally, the court found Derwent "was clinically psychotic and legally insane at the time of the occurrence of July 19, 1988 and was thereby incapable of having [the] necessary intent required under the insurance policy issued by the plaintiff to exclude him from coverage." This language expresses the court's finding that the degree of mental illness suffered by Derwent was extreme. The court's findings were based upon a thorough review of the evidence presented. After reviewing this same evidence, this court is not able to determine the trial court's findings were against the manifest weight of the evidence.

For the above stated reasons, the judgment of the circuit court of Stephenson County is affirmed.

Affirmed.

GEIGER and INGLIS, JJ., concur.