**Robert ADAMSON, Plaintiff,**

v.

**Richard VOLKMER, individually and as the Mayor of the City of Warrenville, IL., Chester Hall, Robert LaDeur, Police Officer for the City of Warrenville, City of Warrenville, Defendants.**

**No. 83 C 3616.**

United States District Court, N.D. Illinois, E.D.

Dec. 18, 1987.

Stanley Jakala, Berwyn, Ill., for plaintiff.

Barry L. Moss, Moss & Bloomberg, Bolingbrook, Ill., Howard T. Brinton, Roderick A. Palmore, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

Robert Adamson is a Warrenville, Illinois resident who charges that in 1982 and 1983 the Warrenville police conspired to intimidate and harass him in violation of his first, sixth and fourteenth amendment rights. Pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, Adamson now seeks both compensatory and punitive damages[1] from the City of Warrenville ("City"), Warrenville Mayor Richard Volkmer, Warrenville Chief of Police Chester Hall, and Warrenville Police Officer Robert LaDeur. A number of motions are presently pending before this court. Before the court addresses the merits of those motions, however, a detailed review of the facts and procedural history of this case is in order.

According to his amended complaint, Adamson's problems with the Warrenville police began on November 23, 1982. On that date Adamson was driving his truck in Warrenville when suddenly a car driven by Chief Hall forced Adamson off the road and into a nearby ditch. After he maneuvered his truck out of the ditch, Adamson, apparently frustrated by Chief Hall's reckless driving, drove in pursuit of the police officer. Eventually Adamson somehow convinced Chief Hall to stop his car and discuss the incident. Adamson alleges that Officer LaDeur exited Chief Hall's car, approached Adamson and advised Adamson to forget about the incident. While the parties talked, two unnamed officers arrived at the scene. Eventually, according to Adamson, Chief Hall ordered the other officers to arrest Adamson and charge him with disorderly conduct and following the vehicle in front of him too closely. Adamson claims that Chief Hall knew at the time that those charges were unfounded and that Adamson overheard Chief Hall tell Officer LaDeur "Too bad I didn't kill the son of a bitch then I wouldn't have this hassle." First Amended Complaint for Declaratory Judgment and Other Relief ¶ 12 at 3. Subsequently, Chief Hall and Officer LaDeur allegedly filed two other baseless-charges against Adamson concerning the November 23, 1982 incident—reckless driving and reckless conduct. It is undisputed that after his trial on the charges related to the November 23, 1982 incident that a jury returned a verdict in Adamson's favor on all counts.[2] *See* Affidavit of Stanley H. Jakala (August 22, 1985) at 1.

1. Although Adamson entitled his amended complaint "First Amended Complaint for Declaratory Judgment and Other Relief," Adamson fails in that complaint to make any specific request for declaratory relief. Consequently, this court considers the amended complaint to be a demand for damage relief only.

2. The record contains a copy of the police report filled out by Officer LaDeur regarding the November 23, 1982 incident. But in deciding the defendants' motion for summary judgment, the court did not consider that report because circumstances exist indicating a lack of trustworthiness on the part of LaDeur. When resolving the issues raised in a motion for summary judgment, the court can consider materials such as the instant police-report if that document is admissible in evidence or otherwise usable at trial. *See* 6 J. Moore, W. Taggart and J. Wicker, *Moore's Federal Practice* ¶ 56.11[1.-8] at 56–206 (2d ed. 1976). The factual findings based on personal knowledge and contained in a police report are admissible as an exception to the hearsay rule "unless the sources of information or other circumstances indicate lack of trustworthiness." Fed.R.Evid. 803(8)(C). The court is to presume reliability until the party opposing admission demonstrates the report is not reliable. *See Ellis v. International Playtex, Inc.,* 745 F.2d 292, 300–01 (4th Cir.1984). In considering an opponent's claim of lack of trustworthiness, the court should consider a number of factors including possible motivation-problems of the author of the report. *See Faries v. Atlas Truck Body Mfg. Co.,* 797 F.2d 619, 622 (8th Cir.1986) (other factors listed); *Ellis,* 745 F.2d at 300–01 (other factors listed).

On an unspecified date after the November 23, 1982 incident, Adamson attended a disciplinary hearing pertaining to Warrenville Police Officer William Phillips. Although not alleged in his amended complaint, Adamson must believe that his attendance at the meeting irritated other officials in the City of Warrenville because Adamson claims that as a result of the November 23, 1982 incident and his attendance at the disciplinary hearing, a rash of improper activity ensued. Specifically, Adamson at various times was subjected to police surveillance by Warrenville police. Furthermore, Mayor Volkmer publicly described Adamson as a "trouble maker" and instructed Warrenville police officers "to drop everything whenever Adamson is on the street." First Amended Complaint ¶ 20 at 5. According to Adamson's amended complaint, Mayor Volkmer also ordered the owners of a Warrenville restaurant not to serve Adamson.

The alleged intimidation continued on December 15, 1982 when certain Warrenville police officers arrested Adamson for driving while under the influence of alcohol. Adamson claims the charges were baseless. But Adamson's "false arrest" claim in this instance is undermined at least in part by a subsequent verdict stating that Adamson was guilty of the crime charged.

Adamson further alleges that on April 6, 1983 he served a subpoena on Officer Phillips for the purpose of having Officer Phillips testify in Adamson's behalf at a scheduled judicial hearing.[3] Adamson claims that Chief Hall, after learning of the subpoena, "intimidated" Officer Phillips and "threatened Phillips with disciplinary action" if Phillips testified on Adamson's behalf. Id. ¶ 15 at 3. Adamson does not state in his amended complaint whether Officer Phillips eventually testified or what the nature of that testimony was if Phillips did testify.

The last act on the part of Warrenville officials related to their alleged scheme to intimidate and harass Adamson occurred on May 15, 1983 when Adamson claims he was falsely arrested for driving under the influence. Adamson does not dispute that on that date a complaining citizen called the Warrenville police to the scene where Adamson's car was in a ditch in front of the citizen's home. Nor does Adamson dispute that the citizen had seen someone urinating on the citizen's yard.[4] When the police arrived, Adamson told the police officer that he had consumed two shot-glasses of peppermint schnapps during the prior eight hours but that he had also eaten during that period. Affidavit of Robert T. Adamson (August 22, 1985) at 1. Adamson initially refused to submit to a breathalyzer test because of all the intimidation he had been subjected to. Id. But later, apparently after his arrest, Adamson requested but was refused such a test. Id. Adamson claims he was not under the influence of alcohol that evening and that this arrest, like his other arrests, was unfounded and designed to harass him.[5] Subsequently, a

---

In the instant case, the entire basis of the plaintiff's claim is that on a number of occasions, including November 23, 1982, Chief Hall and Officer LaDeur acted in a manner inconsistent with the standards of their profession. To consider a report such as that of November 23, 1982 for purposes of the summary judgment motion would be inappropriate in light of the legitimate concerns raised by the plaintiff regarding the truthfulness of these officers concerning the incidents at issue. The defendants have proposed no alternative use for the police reports. The court reserves ruling on the admissibility of these reports until further hearing on the issues raised in this note and until it has had the opportunity to assess the credibility of the authors of the reports.

3. Adamson fails to allege the purpose of that hearing.

4. Adamson says it was the other passenger in his car. Adamson Dep. at 113. Apparently in the police report for the May 15, 1983 incident, the officer wrote that the citizen had seen both Adamson and the other passenger urinating. Even though the defendants cite the report in their motions, the report was not attached to the court's copy nor could the court find it in the court file. Even if the court had the report the court would not have considered it at this time for the reasons already given. See note 2.

5. Adamson's parents both have submitted affidavits saying they saw Adamson at the police station and that their son did not appear to be intoxicated. Affidavits of Robert E. and Dorothy Adamson (August 22, 1985).

trial judge found Adamson to be not guilty of the charges against him based on the May 15, 1983 incident. Affidavit of Stanley H. Jakala (November 6, 1985).

In his amended complaint, Adamson alleges, in a somewhat disorganized manner, a number of constitutional deprivations. Because Judge Nordberg dismissed Adamson's claim under 42 U.S.C. § 1985(3),[6] Adamson's § 1983 claims are all that remain in the amended complaint. This court has already denied the City of Warrenville's first motion for summary judgment.[7] Now the defendants jointly seek summary judgment on their behalf or, in the alternative, a ruling in their favor on certain motions in limine. The court will address the motion for summary judgment first.

## I

### Defendants' Motion for Summary Judgment

The defendants have jointly moved for summary judgment in this case. Before the court can address the motion, however, the court must first clarify the nature of the claims asserted by the plaintiff in his complaint. For purposes of this motion and the remaining proceedings in this case, the court will proceed under the assumption that the following § 1983 claims are being asserted in the amended complaint:

1. Count I—a fourth amendment claim based on the false arrest of November 23, 1982;

2. Count II—a first amendment claim based on the defendants' harassment of Adamson after Adamson attended the disciplinary hearing;

3. Count III—a fourth amendment claim based on the police surveillance of the plaintiff;

4. Count IV—a fourth amendment claim based on the false arrest of December 15, 1982;

5. Count V—a sixth amendment claim based on Chief Hall's intimidation of Officer Phillips;

6. Count VI—a fourth amendment claim based on the false arrest of May 15, 1983.[8]

In their motion for summary judgment, the defendants attack every count but Count II. Before addressing the merits of the motion as it pertains to the five counts at issue, the court will briefly restate the principles it must follow when resolving the motion. For this court to enter an order of summary judgment on a count, the court must find that there is no genuine issue of material fact and that the moving party is entitled to judgment on that count as a matter of law. Fed.R.Civ.P. 56(c). In determining whether any issues of material fact are in dispute, the court must view the inferences drawn from the record in the light most favorable to the non-moving party. *Bartman v. Allis-Chalmers Corp.*, 799 F.2d 311, 312 (7th Cir.1986). Once the moving party has demonstrated the absence of a genuine issue of material fact,

6. *See Adamson v. Volkmer,* No. 83 C 3616, slip op. at 6 (N.D.Ill. December 14, 1984).

7. *See Adamson v. Volkmer,* No. 83 C 3616, slip op. at 6 (N.D.Ill. April 25, 1986) (Williams, J.). In that motion, the City argued that it had established that the December 15, 1982 and May 15, 1983 arrests were supported by probable cause and that therefore the City was entitled to summary judgment because the November 23, 1982 arrest alone is insufficient to establish the policy or custom requirement established in *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978) for municipal liability under section 1983. The court rejected the City's argument because even if one assumed that the plaintiff had to rely only on the November 23, 1982 incident, in appropriate circumstances a single incident can establish a municipal policy and lead to municipal liability. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). Since neither party had discussed *Pembaur* the court concluded summary judgment was inappropriate.

8. Even though the plaintiff repeatedly refers to the defendants' actions as "false arrests," he in passing terms the violation to be a fourteenth amendment deprivation of liberty without due process. The appropriate amendment for "false arrest" analysis is the fourth, not the fourteenth. *See Baltz v. Shelly,* 661 F.Supp. 169, 179 n. 37 (N.D.Ill.1987) (Williams, J.). Should the plaintiff desire to assert a procedural or substantive due process claim, he will have to seek leave from the court to amend his complaint and clearly allege such a deprivation.

the opposing party must show through affidavits or other materials that a specific factual issue exists. *Valentine v. Joliet Township High School Dist.*, 802 F.2d 981, 986 (7th Cir.1986). Generally, the inquiry that the court must perform is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finding of fact because they may be reasonably resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the court determines a trial is necessary, the court "shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actively and in good faith controverted." Fed.R.Civ.P. 56(d).

### A. *November 23, 1982 False Arrest*

■ As interpreted by the court, the amended complaint alleges that on November 23, 1982 the individual defendants arrested the plaintiff without probable cause in violation of the plaintiff's fourth amendment right to be free from unreasonable seizures. An arrest made in violation of the fourth amendment does give rise to a cause of action under § 1983. *See, e.g., Llaguno v. Mingey*, 763 F.2d 1560, 1563–65 (7th Cir.1985), *cert. denied*, —— U.S. ——, 107 S.Ct. 16, 92 L.Ed.2d 783 (1986); *Baltz v. Shelley*, 661 F.Supp. 169, 178 (N.D.Ill. 1987) (Williams, J.). In a case such as this, the issue is whether, at the moment of the arrest, the arresting officers had probable cause to make the arrest, i.e., whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the individual in question had committed or was committing an offense. *See, e.g., Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Probable cause means a reasonable basis—"more than bare suspicion, but less than virtual certainty"—for believing that a seizure is necessary. *See Llaguno*, 763 F.2d at 1565 (citations omitted). In a damages suit, if there is room for a difference

of opinion, the issue is best left for the jury. *Ibid.* As a result, courts are generally hesitant to grant summary judgment in § 1983 actions which raise the issue of probable cause. *See Reardon v. Wroan*, 811 F.2d 1025, 1027 (7th Cir.1987); *Llaguno*, 763 F.2d at 1565; *Baltz*, 661 F.Supp. at 178.

The defendants argue that they are entitled to summary judgment on Count I because there is no contention that a "conspiracy" existed at the time of the November 23, 1982 arrest. As to the defendants Chief Hall and Officer LeDeur in their individual capacity, this argument misses the point completely. For the plaintiff's § 1983 claim against Hall and LeDeur to be successful, he need only establish that those defendants deprived him of a federal right and that they did so under color of law. *See Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). For these two defendants, both of whom were involved in the actual arrest and clearly acted under color of law, the sole inquiry is whether probable cause existed for the plaintiff's arrest. If not, these defendants are liable as individuals to the plaintiff for damages.

■ It appears that the defendants' argument in fact is intended to focus on the City's liability alone. A successful § 1983 suit against a municipality such as the City requires that the plaintiff establish that some municipal policy, custom or practice caused his injury. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Since municipalities are ultimately liable in successful official-capacity actions, the same rule applies to the plaintiff's suit against the individual defendants in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985). The City in its motion questioned whether the rule could be satisfied for the November 23, 1982 arrest. Because the City has discharged its burden on this motion by arguing the absence of evidence on a crucial element of the plaintiff's case, the burden shifts to the plaintiff to present signifi-

cant probative evidence of his claim that a municipal policy existed on the date in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed. 2d 265 (1986); *Magid Mfg. Co., Inc. v. U.S.D. Corp.*, 654 F.Supp. 325, 329 (N.D.Ill. 1987) (Williams, J.).

The plaintiff attempts to discharge that burden by relying on the Supreme Court's decision in *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). In *Pembaur*, the Court addressed the question of "whether, and in what circumstances, a decision by municipal policymakers on a single occasion may satisfy the [policy] requirement." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 1294, 89 L.Ed.2d 452 (1986). In summary and briefly, the Court concluded in its plurality opinion "that municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 1300 (citation omitted). The plaintiff cites *Pembaur* in support of his proposition that because Chief Hall had authority to set municipal policy in the area of law enforcement, the City can be held liable for the damages caused by the constitutional deprivation on November 23, 1982.

This court believes that the plaintiff is extending *Pembaur* far beyond the scope intended by the Supreme Court. The issue in this case is whether Chief Hall, at the time he ordered the arrest of the plaintiff, was making "policy" for the City. For the court to make that determination, the court must have a clear understanding of the purpose of the policy requirement. That judicially created requirement, fashioned in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), is designed to ensure that municipalities are not held liable for the actions of their employees solely based on the doctrine of respondeat superior, yet to enable injured parties to obtain a judgment from municipalities that in some way were responsible for the deprivation in question. *See Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2036. Simply put, the injured party can get the municipality if the latter is in some way at fault for the injury. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 S.Ct. 2427, 2440, 85 L.Ed.2d 791 (1985) (Brennan, J., concurring).

■ With the foregoing in mind, the court will now recharacterize the issue in this case. Should the City be held liable for what happened on November 23, 1982 because it is at fault for what happened, or is this a case in which the City could not have done anything to prevent the harm that occurred? In other words, was this merely a case of a municipal employee running amok? Looking at the question in this light, the court concludes that the City itself should not be held liable for Chief Hall's actions because those acts alone did not create a municipal policy. Chief Hall is not the ultimate policymaker for the City; Mayor Volkmer and the city council are. Ill.Rev.Stat. ch. 24, ¶ 4–5–1. The mayor, with the consent of the city council, appoints a board of police commissioners, *id.* ¶ 10–2.1–1, which in turn appoints the chief of police. *Id.* ¶ 10–2.1–4. The powers of the police are set forth by statute and include preserving the "rights" of all citizens. *Id.* ¶ 7–4–8.

With the foregoing policymaking structure of the City in mind, the court concludes that instead of making policy for the City on November 23, 1982, Chief Hall was violating the City's unstated but implicit policy to abide by the express principles of the fourth amendment. The fourth amendment is clear—arrests made without probable cause are unconstitutional. The ultimate policymakers of the City did not have to admonish Chief Hall to follow such a clearly established principle in order for the City to avoid liability for his violation of that principle. Chief Hall's obligation to obey this principle established the same restraint on his authority as such a general

admonition by the City would have.[9] Clearly, Chief Hall did not have the authority under state or local law to initiate a policy directly contrary to the fourth amendment. As a result, the plaintiff's fourth amendment claim against the City and the individual defendants based on the November 23, 1982 arrest fails. *See Pembaur*, 106 S.Ct. at 1301–02 (White, J., concurring) (a sheriff is not the final policymaker with respect to the probable-cause requirement for a valid arrest); *Joiner v. City of Ridgeland, Mississippi*, 669 F.Supp. 1362, 1370 (S.D.Miss. 1987).

■ This would be a different case if an official such as the mayor or the city council, the ultimate policymaking authorities for the City, had ordered or promulgated a policy which clearly violated an established constitutional principle. The actions of the ultimate policymakers of the City are policy even if patently unconstitutional. It would also be a different case if Chief Hall had repeatedly arrested citizens without probable cause and City officials failed to redress the problem of which they were aware; in such a case the ultimate policymakers would be sanctioning such conduct, in effect making that conduct the policy of the City itself. *See Monell*, 436 U.S. at 691 n. 56, 98 S.Ct. at 2036 n. 56 (deeply embedded traditional ways of carrying out state policy are often more representative of the law than a written text). A third alternative for City liability is in cases such as *Pembaur* where the action was not declared unconstitutional until after it was performed. *See Pembaur*, 106 S.Ct. at 1295. In that last instance because the conduct involved was not a violation of an express federal, state or local law, the City could not be said to have had an implicit policy against it. Consequently, unless the City had an express prohibition against such conduct, the action of a secondary policymaker such as Chief Hall might constitute "policy" if within the scope of his delegated authority. In this case, however, the patently unconstitutional action of a secondary policymaker such as Chief Hall,

however, cannot be "policy" under *Pembaur* because the City's delegation of authority to him implicitly carried with it the instruction to follow existing and established federal, state or local law. By violating the fourth amendment, Chief Hall acted beyond the scope of his delegated authority.

Only Mayor Volkmer remains. Since the plaintiff has offered no evidence implicating this defendant in the November 23, 1982 arrest, the fourth amendment claim in Count I against the mayor also fails.

### B. *Police Surveillance*

■ In his complaint, the plaintiff merely alleges that "after November 23, 1982, from time to time, the plaintiff has been under illegal police surveillance by the City of Warrenville, Illinois, Police Department." First Amended Complaint ¶ 20(a) at 5. No further explanation is given. But "surveillance of an individual's home from a public area and the following of an automobile on public streets and highways are permitted." *Bootz v. Childs*, 627 F.Supp. 94, 103 (N.D.Ill.1985) (Grady, C.J.) (citing *United States v. Knotts*, 460 U.S. 276, 280–82, 103 S.Ct. 1081, 1084–85, 75 L.Ed.2d 55 (1983)). Because the plaintiff has failed to support this fourth amendment claim with even an allegation that the defendants intruded on his reasonable expectation of privacy, the court dismisses Count III.

### C. *December 15, 1982 False Arrest*

■ The parties do not dispute that the plaintiff was arrested for driving under the influence of alcohol on December 15, 1982 and that subsequently he was convicted of that crime. The defendants argue that the conviction conclusively establishes that there was probable cause for the arrest. That argument misses its mark, but only slightly. According to *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), this court must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do

---

**9.** For further discussion, *see* 2 National Lawyers Guild, *Civil Rights Litigation and Attorney Fees*  *Annual Handbook* (Jules Lobel, ed. 1986) at 37–39.

so." *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). In a § 1983 proceeding such as this, the court applies state collateral-estoppel law in determining whether a § 1983 claim is precluded by a prior state proceeding. *Haring v. Prosise,* 462 U.S. 306, 313, 103 S.Ct. 2368, 2373, 76 L.Ed.2d 595 (1983); *Bailey v. Andrews,* 811 F.2d 366, 369 (7th Cir.1987). In Illinois, where a criminal defendant has been convicted on the merits at trial, the evidence surrounding that conviction can be admitted in any subsequent civil proceeding as prima facie evidence of the facts upon which the conviction was based. *Rodriguez v. Schweiger,* 796 F.2d 930, 933 (7th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1899, 95 L.Ed.2d 506 (1987); *Thornton v. Paul,* 74 Ill.2d 132, 23 Ill.Dec. 541, 549, 384 N.E.2d 335, 343 (1978).[10] "This approach preserves the opportunity to rebut the factual basis of the conviction insofar as those facts are applicable to the civil proceeding." *Thornton,* 23 Ill.Dec. at 549, 384 N.E.2d at 343.

■ In light of the foregoing, the conviction does not establish conclusively that probable cause for the December 15, 1982 arrest existed; but it does establish a prima facie case that probable cause did exist. But as it turns out, the distinction makes no difference in this case because the plaintiff, in response to the motion, failed to provide *any* evidence to support his argument that the arrest on December 15, 1982 was made without probable cause. Since the plaintiff bears the burden on this issue, all the defendants really had to do was show the absence of evidence to support the plaintiff's case. *Celotex Corp.,* 106 S.Ct. at 2554. The plaintiff's complete failure of proof on this essential element of his case entitles the defendants to judgment as a matter of law.[11] *Id.* at 2553. *See generally* S. Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court,* 116 F.R.D. 183, 188 (1987).

### D. Sixth–Amendment Claim

■ Even though a factual dispute exists as to whether Chief Hall threatened Officer Phillips with disciplinary action if he testified on the plaintiff's behalf, that dispute is of no consequence to this motion. The defendants argue that there is no evidence that this alleged threat had any effect on Officer Phillips. Specifically, the plaintiff has not even alleged Officer Phillips failed to testify or that Officer Phillips' testimony was altered in any way. In his response to the defendants' motion, the plaintiff failed to even address this argument. Consequently, the plaintiff having failed to meet his burden of providing evidence to support his claim, *see Celotex Corp.,* 106 S.Ct. at 2554, the court dismisses Count V.

### E. May 15, 1983 False Arrest

Finally, the defendants argue that the police report and the plaintiff's own deposition testimony establish that probable cause existed for the May 15, 1983 arrest. The court has already stated why it presently gives little weight to that report. *See* note 2. As for Adamson's deposition testimony, the conclusions that can be drawn from the testimony are ambiguous at best. This question is one for a jury. *See Reardon,* 811 F.2d at 1027; *Llaguno,* 763 F.2d at 1565; *Baltz,* 661 F.Supp. at 178.

## II

### Motions in Limine

The court stays its ruling on the motions in limine until shortly before the case is tried.

### Conclusion

1. The court grants the City and Mayor Volkmer summary judgment on Count I.

---

**10.** The Illinois Supreme Court rejected the argument that proof of a criminal conviction is conclusive proof of the facts on which the conviction was based. *See Thornton,* 23 Ill.Dec. at 549, 384 N.E.2d at 343.

**11.** For purposes of this motion, the plaintiff's self-serving factual statements contained in his memoranda of course dod not constitute an appropriate response to the defendants' motion.

2. The court grants all defendants summary judgment on Counts III, IV and V. Those counts are dismissed.

3. The court denies the defendants' motion for summary judgment on Count VI.

4. The court stays ruling on the motions in limine until shortly before the trial of this matter.

5. This case should settle. As a result, the court orders the plaintiff and all counsel to appear for the pretrial conference on the date set on the attached minute order. The purpose of the conference is to settle the case. Of course, the court expects the parties to exchange their new proposed settlement terms well before the date of that conference.