WENDELL WRIGHT *et al.*, Plaintiffs-Appellants, v. THE CITY OF DAN-
VILLE, Defendant-Appellee.

Fourth District   No. 4—94—0073

Argued September 20, 1994.—Opinion filed October 20, 1994.

Everett L. Laury and Gregory G. Lietz (argued), both of Hutton, Laury, Hesser, Lietz & Wilcox, of Danville, for appellants.

Craig H. DeArmond (argued), of Kurth, Wolgamot & DeArmond, of Danville, for appellee.

JUSTICE COOK delivered the opinion of the court:

Plaintiffs, former commissioners and corporation counsel of the City of Danville (City) (referred to herein as the Commissioners), filed a complaint seeking indemnity from the City for attorney fees and litigation expenses incurred in defending a criminal prosecution. The trial court dismissed the complaint under sections 2—615 and 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, pars. 2—615, 2—619). We reverse and remand.

In January 1987 a class action under the Voting Rights Act of 1965 (Act) (42 U.S.C. § 1973b (1982 & Supp. V 1987)) was filed against the City in Federal district court, alleging that the City's nonpartisan, at-large process for electing commissioners excluded African-American representation and diluted African-American voting

strength. The City at that time was governed by four elected commissioners, who possessed both legislative and executive powers. A settlement decree was proposed that the form of government be changed from a mayor-commissioner system to a mayor-alderman system, with aldermen elected from seven two-member districts. The settlement also provided that the Commissioners would continue in office for three years as administrators of the various departments which corresponded to their commission duties, at salaries to be set by themselves as current commissioners. These three-year positions were designed to ensure a smooth transition from the old form of government to the new. The positions were also designed for the personal benefit of the Commissioners, to compensate them for the positions they were giving up.

The State's Attorney for Vermilion County, concerned that the Commissioners' conduct violated the conflict-of-interest law (Ill. Rev. Stat. 1987, ch. 24, par. 3—14—4(a)), issued subpoenas for the Commissioners to appear before a grand jury. In response, the district court added the State's Attorney to the proceedings before it and enjoined the grand jury proceedings. After a hearing, the district court approved and entered the decree, finding that " 'the proposed decree is fair, adequate, and reasonable and that it does not violate [S]tate or [F]ederal law.' " (See *Derrickson v. City of Danville* (7th Cir. 1988), 845 F.2d 715, 717.) The court dissolved the injunction against the State's Attorney. No one appealed.

The State's Attorney reconvened the grand jury, which returned an eight-count indictment against the Commissioners. The district court again enjoined the prosecution on the basis that it had previously resolved the issue of criminal liability and that an injunction was necessary to protect its prior decree. The court of appeals reversed on the basis that adherence to the prior decree was not required by the principles of *res judicata*: (1) there was no claim preclusion because the State's Attorney was not required to raise his contentions as a compulsory counterclaim under Federal Rules of Civil Procedure 13(a) (Fed. R. Civ. P. 13(a) (see 28 U.S.C. R. 13(a) (1988))); (2) there was no issue preclusion because the State's Attorney had not been allowed to litigate the issues involved, and the district court had decided only that the City had the power to enter into the decree, not that the Commissioners were the right parties to negotiate on behalf of the City. (*Derrickson*, 845 F.2d at 721.) The court of appeals was critical of the district court for not resolving "all issues necessary," but concluded that the district court "did not in fact resolve the lawfulness of the negotiating process." (*Derrickson*, 845 F.2d at 723.) The concurring opinion agreed, but continued: "Under

no circumstances should the [F]ederal court approve a consent decree and then stand idly by while those who helped provide the benefits of the decree go to jail." (*Derrickson*, 845 F.2d at 725 (Cudahy, J., concurring).) Such an approach might be the beginning of the end of effective enforcement of the Act. *Derrickson*, 845 F.2d at 725 (Cudahy, J., concurring).

The matter returned to State court, where the Commissioners were convicted at a bench trial of official misconduct (Ill. Rev. Stat. 1989, ch. 38, par. 33—3(c)) and of violating the prohibition against municipal officials' having pecuniary interests in contracts involving the governmental unit they serve (Ill. Rev. Stat. 1989, ch. 24, par. 3—14—4(a); ch. 102, par. 3(a)). The Commissioners were sentenced to two years' conditional discharge and fined $1,000 each. The corporation counsel was sentenced to two years' conditional discharge, 90 days in jail, and a fine of $5,000. This court reversed. *People v. Scharlau* (1990), 193 Ill. App. 3d 280, 282, 549 N.E.2d 911, 913, *rev'd* (1990), 141 Ill. 2d 180, 565 N.E.2d 1319.

On appeal from our decision, the supreme court reinstated the convictions, concluding that the consent decree was a "contract," that even a "mixed-interests" contract which benefitted both the City and the Commissioners violated the statute, that the Commissioners could and should have removed themselves from the negotiating process, and that conviction under section 33—3 of the Criminal Code of 1961 (Criminal Code) (Ill. Rev. Stat. 1989, ch. 38, par. 33—3) required only an intent to obtain a personal advantage and not a knowledge that the action was outside the officer's lawful authority. The supreme court recognized that the Commissioners' concern for some sort of transitional government was legitimate, but could conceive of no way to construe the lawful authority of the Commissioners to include the preservation of their jobs. (*People v. Scharlau* (1990), 141 Ill. 2d 180, 197, 565 N.E.2d 1319, 1327.) The supreme court rejected the argument that the Commissioners had relied on the Federal decree, because the criminal case issues were not actually litigated in the Federal court and the criminal acts occurred before the decree was entered. *Scharlau*, 141 Ill. 2d at 202-03, 565 N.E.2d at 1329.

The Commissioners sought a writ of *habeas corpus* in Federal court, alleging the State criminal prosecution violated their first amendment right to petition the court for a redress of their grievances. (*Wright v. DeArmond* (7th Cir. 1992), 977 F.2d 339, 343-44.) The court of appeals held the Commissioners were not prevented from petitioning the government with respect to their own needs; they only were forbidden from doing so while representing official interests. (*Wright*, 977 F.2d at 346.) The court noted it was not its

place to determine the wisdom of Illinois' conflict-of-interest statutes, nor to pass on the wisdom of its prosecutorial officials, only to determine whether the Commissioners had been denied a Federal constitutional right, which it concluded they had not. The chief judge, dissenting, would have accepted the analysis of the district judge who approved the settlement. ("Unless Judge Baker was an unindicted co-conspirator, I would take him at his word." (*Wright*, 977 F.2d at 350 (Bauer, C.J., dissenting)).) In the view of the chief judge, there was no reason, other than a general distrust of public officials, to believe that the Commissioners knowingly violated a single law—State or Federal. *Wright*, 977 F.2d at 350 (Bauer, C.J., dissenting).

This appeal arises out of a complaint filed by the Commissioners on September 16, 1992, in the Vermilion County circuit court, seeking indemnity for attorney fees and litigation expenses ($321,311.47) incurred in defending the criminal prosecution. The complaint was based on common law indemnity (count II), and on two Danville indemnity ordinances, No. 7192 (City of Danville, Ill., Ordinance 7192 (July 8, 1986)) and No. 7237 (City of Danville, Ill., Ordinance 7237 (March 10, 1987)) (count I). Ordinance No. 7237 was passed March 10, 1987, soon after the consent decree was entered, and was considered by the supreme court to be evidence which "serves to further impugn defendants' actions in negotiating the terms of the consent decree." (*Scharlau*, 141 Ill. 2d at 200, 565 N.E.2d at 1328.) The trial court granted the City's motion to dismiss on the basis that the ordinances did not afford indemnity in this case, there was no basis for common law indemnity, and the activities of the Commissioners "tainted the circumstances in such a way" that the court was compelled to find indemnity improper.

■ Under section 2—615 of the Code, a trial court should dismiss a cause of action on the pleadings only if it is clearly apparent that no set of facts can be proved which will entitle a plaintiff to recover. (*Illinois Graphics Co. v. Nickum* (1994), 159 Ill. 2d 469, 488.) If a cause of action is dismissed on a section 2—619 motion, the question on appeal is whether there is a genuine issue of material fact and whether defendant is entitled to judgment as a matter of law. *Illinois Graphics*, 159 Ill. 2d at 494.

Pertinent language from ordinance No. 7192, passed July 8, 1986, is set out below. The emphasized and bracketed language was later added by ordinance No. 7237.

"Under [*this*] indemnification, the City shall pay all expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by [*the*] person in connection with such action, suit or proceeding if he acted in good

faith and in a manner he reasonably believed to be in or not opposed to the best interests of the City. Such indemnification by the City shall apply to any criminal action or proceeding, if the indemnified person had no reasonable cause to believe his conduct was unlawful[, *and any act or omission within the scope of the office or employment*]. The termination of any action, suit or proceeding by judgment or settlement, conviction or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner he or she reasonably believed to be in or not opposed to the best interests of the City, and with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful." (Emphasis added.) (City of Danville, Ill., Ordinance 7192 (July 8, 1986).)

Ordinance No. 7237 also added language that it applied to "any appointee of the Mayor," which would include the corporation counsel. City of Danville, Ill., Ordinance 7237 (March 10, 1987).

■ Some preliminary observations may be made concerning these ordinances. The ordinances manifest an intent to provide indemnity to the fullest extent allowed by law. The ordinances specifically allow indemnity for an act which results in the criminal conviction of the indemnified person. The trial court's statement that the conduct of the Commissioners "tainted the circumstances" implies that any hint of impropriety prevents indemnity and is at odds with the broad language of the ordinances.

## I. THE *SCHARLAU* DECISION

■ The City places primary reliance on the supreme court's holding that the "lawful authority" of the Commissioners did not include attempts to preserve their jobs. (*Scharlau*, 141 Ill. 2d at 197, 565 N.E.2d at 1327.) The City argues that if the Commissioners did not have "lawful authority" their actions must have been outside the scope of their employment. The supreme court's holding, however, was that "lawful authority" was not an issue under section 33—3 of the Criminal Code. Section 33—3 of the Criminal Code "requires only that the accused have an intent to obtain a personal advantage for himself or another." (*Scharlau*, 141 Ill. 2d at 199, 565 N.E.2d at 1328.) "Knowledge that the action in question violates the statute by being outside the officer's lawful authority is not an element." *Scharlau*, 141 Ill. 2d at 199, 565 N.E.2d at 1328.

The drafters of section 33—3 may have recognized that not every attempt of a public officer to obtain a personal advantage should be wrongful. (Is it a conflict of interests for city officials to enact an indemnity ordinance?) Section 33—3 of the Criminal Code attempted

to limit its sweeping liability by the requirement that the act performed be "in excess of [the officer's] lawful authority" (Ill. Rev. Stat. 1989, ch. 38, par. 33—3(c)), but that circular limitation was vague and unsatisfactory. The limitation could have been read to preclude liability in almost every personal advantage situation. The supreme court refused such a reading on public policy grounds.

> "These statutes are rarely or ineffectively used to battle official corruption now. [Citations.] We will not embrace an interpretation which will further inhibit their use and frustrate the legislative intent to enact 'sweeping prohibitions.' " *Scharlau*, 141 Ill. 2d at 199, 565 N.E.2d at 1328.

■ We do not see that the supreme court's rejection of the lawful authority limitation of section 33—3 is any indication that the term "scope of employment" should be given an unusual meaning in this case. Conduct clearly is within the scope of employment even though done in part to serve the purposes of the employee. (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 359-60, 543 N.E.2d 1304, 1308; see Restatement (Second) of Agency §§ 228, 236 (1958).) An act may be within the scope of employment although consciously criminal or tortious. (Restatement (Second) of Agency § 231 (1958).) The argument could be made that the commission of a criminal act should never be within the scope of employment, but some types of employment require an employee to approach the line which divides criminal from noncriminal conduct. An example is a bouncer who is told by his employer to eject rowdy patrons from a bar (but not to assault anyone). As a matter of agency law, criminal conduct may be within the scope of employment.

## II. THE VALIDITY OF THE ORDINANCES

The City does not argue that the statutes are invalid, at least not that the power to enact them was lacking or that the proper procedures to enact them were not followed. The City does argue (1) the supreme court has found that the first ordinance, No. 7192, does not indemnify for criminal acts; (2) omission of the language "within the scope of office or employment" is fatal to application of ordinance No. 7192 here; (3) the second ordinance, No. 7237, cannot be applied retroactively; and (4) that an agreement to indemnify against wilful and wanton conduct is void as against public policy.

■ The City argues the supreme court found in *Scharlau* that ordinance No. 7192 did not afford indemnity here. That argument exaggerates the supreme court's "parenthetical note," which found it odd that a new indemnity ordinance was enacted, thereby implying that prior to the new ordinance those who violated a criminal statute

while acting on the city's behalf in good faith would have been acting outside of their official capacity. The supreme court's comments were directed to the mental state of the Commissioners and were not intended to be an authoritative interpretation of the scope of ordinance No. 7192. The meaning of ordinance No. 7192 must be determined from its language.

As to the second argument, that the omission of the language "and any act or omission within the scope of the office or employment" is fatal to ordinance No. 7192, it is unclear what that language adds. The requirement that the act occur within the scope of employment would seem to be implied in any indemnity ordinance. A city worker may be entitled to indemnity if he assaults someone on his job, but not if he assaults someone long after he has left work. Even if it were not implied, ordinance No. 7192 contains language (not quoted above) limiting indemnity to situations where the public officer "has acted in his official capacity." (City of Danville, Ill., Ordinance 7192 (July 8, 1986).) Failure to specifically list scope of employment as a factor in imposing liability is not fatal to ordinance No. 7192. The Commissioners could argue that ordinance No. 7237 expanded the right to indemnity, that under that ordinance there is indemnity for any act within the scope of employment, irrespective of good faith, acting in the best interests of the City, belief that conduct was lawful, or anything else. Neither party makes that argument in this case, and it is not necessary for us to consider what the result would be if they did.

The argument that ordinance No. 7192 cannot be applied retroactively was not addressed by the trial court, and we decline to consider it here. It does appear that most of the expenses for which reimbursement was sought were incurred after the enactment of ordinance No. 7192, and application of the ordinance to them would not be a retroactive application.

Indemnity contracts are generally valid, but may violate public policy where a statute so requires, or where they indemnify against wilful misconduct. (*Davis v. Commonwealth Edison Co.* (1975), 61 Ill. 2d 494, 500-01, 336 N.E.2d 881, 885.) A contract is unenforceable on grounds of public policy (1) if legislation so provides, or (2) if the interest in its enforcement "is clearly outweighed in the circumstances by a public policy against" its enforcement. (Restatement (Second) of Contracts § 178(1) (1981).) Indemnity against intentional misconduct may be tolerated where it provides benefits for the victim, but not where it compensates the wrongdoer. (See *Dixon Distributing Co. v. Hanover Insurance Co.* (1994), 161 Ill. 2d 433, 445-46 distinguishing *Rubenstein Lumber Co. v. Aetna Life & Casualty Co.* (1984), 122

Ill. App. 3d 717, 462 N.E.2d 660; *University of Illinois v. Continental Casualty Co.* (1992), 234 Ill. App. 3d 340, 359, 599 N.E.2d 1338, 1351.) The indemnity statutes here arguably benefit a wrongdoer, but they do not provide indemnity for wilful misconduct. By the terms of the ordinances there is indemnity only if the indemnitee had no reasonable cause to believe his conduct was unlawful.

*Davis* considered the Illinois indemnity statute (see Ill. Rev. Stat. 1971, ch. 29, par. 61), which declared void construction contract agreements to indemnify against a person's own negligence. There is no statute which declares indemnity such as that found in these ordinances to be contrary to public policy. Quite the contrary, the legislature, in language *identical* to that found in ordinance No. 7192, has authorized business corporations to provide indemnification for their officers and employees. See 805 ILCS 5/8.75(a) (West 1992).

The City argues that the public policy of the State is expressed in section 2—302 of the Local Governmental and Governmental Employees Tort Immunity Act (Act), which prohibits indemnification of an employee for punitive damages (wilful and wanton conduct). (745 ILCS 10/2—302 (West 1992).) We have already noted that the Commissioners do not seek recovery for wilful and wanton conduct in this case. Another section of the Act, section 9—102 (745 ILCS 10/9—102 (West 1992)), requires a local public entity to pay any tort judgment or settlement for which a public employee, acting within the scope of his employment, is liable. The Commissioners cite *Coleman v. Smith* (7th Cir. 1987), 814 F.2d 1142, where section 9—102 was held to require a village to indemnify officials acting within the scope of their employment, even though their acts were malicious, and in furtherance of their own objectives. Section 2—302 of the Act was not discussed in *Coleman. Coleman*, which involved indemnification for a tort judgment and provided a benefit for a victim, is not particularly helpful in resolving this case, which involves litigation expenses in a criminal case.

## III. COLLATERAL ESTOPPEL

The City argues that under the doctrine of collateral estoppel (issue preclusion) "several courts" have decided the following elements essential to a claim for indemnity under the ordinances: (1) whether the Commissioners acted in good faith; (2) whether the Commissioners had reasonable cause to believe their conduct was unlawful; and (3) whether the Commissioners acted within the scope of their office or employment. This argument ignores the fact that the indemnity ordinances specifically provide that collateral estoppel does not apply: that a judgment or conviction does not create any

presumption of lack of good faith or cause to believe conduct unlawful. Parties may agree to waive the rules of *res judicata*. (Restatement (Second) of Judgments § 26(1)(a) (1982).) Even if collateral estoppel applied here, proof of a criminal conviction in a civil case is not conclusive proof of the facts on which it is based, but only *prima facie* evidence. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 151, 384 N.E.2d 335, 343.) The City argues that the use of facts determined in a criminal proceeding as the basis for collateral estoppel in a civil suit presents no problem, citing *Adamson v. Volkmer* (N.D. Ill. 1987), 680 F. Supp. 1191, 1199. *Adamson* in fact held just the opposite. The conviction in that case did not establish conclusively that probable cause existed, but was only *prima facie* evidence of probable cause. *Adamson* based its holding on *Thornton,* where "[t]he Illinois Supreme Court rejected the argument that proof of a criminal conviction is conclusive proof of the facts on which the conviction was based." *Adamson,* 680 F. Supp. at 1199 n.10.

Nor does it appear that these issues have been resolved against the Commissioners. Bad faith or intentional wrongdoing is not necessary to support a conviction under the Illinois statutes which prohibit self-dealing. (*Scharlau,* 141 Ill. 2d at 189-90, 565 N.E.2d at 1323.) The supreme court did not determine in *Scharlau* that any of the terms of the settlement were improper, and recognized that the Commissioners' concern for some sort of transitional government was legitimate. (*Scharlau,* 141 Ill. 2d at 197, 565 N.E.2d at 1327.) The court found only that the Commissioners should not have been the ones to negotiate the settlement, and that the issues in the case were whether the Commissioners negotiated the contract and whether the contract benefitted them. See *Scharlau,* 141 Ill. 2d at 198-99, 565 N.E.2d at 1327-28.

There is no question that the conduct of the Commissioners was unlawful. That question has been resolved. There is a question, however, whether the Commissioners had reasonable cause to believe their conduct was unlawful. The supreme court saw no reason to address that issue in *Scharlau.* "Knowledge that the action in question violates the statute by being outside the officer's lawful authority is not an element." (*Scharlau,* 141 Ill. 2d at 199, 565 N.E.2d at 1328.) The supreme court did observe that passage of ordinance No. 7237 served "to further impugn defendants' actions," but that observation was only a parenthetical expression, "not dispositive" to the case. (*Scharlau,* 141 Ill. 2d at 200, 565 N.E.2d at 1328.) There is no collateral estoppel on this issue. On the question of knowledge or cause for belief, we note that a number of judges, both State and Federal, have agreed with the Commissioners that their conduct was lawful.

Collateral estoppel acts to bar the retrial of an issue that has been fairly and completely resolved in a prior proceeding. The doctrine applies if (1) the issue decided in the prior adjudication is identical with the one presented in the current suit; (2) the prior suit was terminated with a final judgment on the merits; and (3) the party against whom the estoppel is asserted was a party or in privity with a party in the prior suit. (*In re Nau* (1992), 153 Ill. 2d 406, 424, 607 N.E.2d 134, 142-43.) For collateral estoppel to apply, the issue litigated must have been essential to the judgment. (Restatement (Second) of Judgments § 27 (1982).) The doctrine of collateral estoppel applies only to controlling facts or questions, or only to points necessary to the first adjudication. (*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.* (1994), 159 Ill. 2d 137, 153-54, 636 N.E.2d 503, 510.) A court's reference in passing, or *dicta*, on the subject of good faith or belief in the legality of conduct does not give rise to collateral estoppel.

■ We have discussed the question of scope of employment above. Scope of employment was not an issue in *Scharlau*. Scope of employment is a concept usually considered in determining the liability of a principal to a third party for an agent's torts. It is not narrowly applied in those cases and is not a real issue in this case. The true questions here are whether the Commissioners acted in good faith, in a manner not opposed to the best interests of the City, and whether they had cause to believe their conduct was unlawful. A narrow view of scope of employment should not be used in this case to prevent consideration of the true issues.

## IV. CONCLUSION

As we must reverse on the question of indemnity under the ordinances, we need not consider whether the Commissioners adequately stated a cause of action for common law indemnity.

This case is a different one from the criminal case which resulted in the Commissioners' convictions. Although the Commissioners' good faith and knowledge of the unlawfulness of their conduct was not an issue in the criminal case, they are issues in this case. The fact that the Commissioners were acting within the scope of their employment was not a defense in the criminal case, but they do appear to have been acting within the scope of their employment for indemnity purposes. At this stage we must accept as true the facts alleged in the complaint. The City has chosen to adopt ordinances which provide indemnity even for those who are convicted of some criminal offenses. We cannot say those ordinances are inappropriate. Where conduct which is required of those holding a certain office

carries with it a risk of criminal prosecution, it can be reasonable for the public entity for which the work is done to bear financial responsibility even for expenses incurred in such criminal prosecutions, at least in some cases. (See *Board of Trustees, Village of Bolingbrook Police Pension Fund v. Underwood, Neuhaus & Co.* (N.D. Ill. 1990), 742 F. Supp. 984, 989 (village treasurer's violation of Rule 10b—5 of the Securities Exchange Act of 1934 (see 17 C.F.R. § 240.10b—5 (1994))).) Otherwise it may be difficult to encourage capable individuals to seek public office. The Commissioners are entitled to present their evidence to the trier of fact.

It is not clearly apparent that the Commissioners will be unable to prove a set of facts which will enable them to recover. Genuine issues of material fact exist in this case and the City is not entitled to judgment as a matter of law. The trial court's grant of the motion dismissing the complaint is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

McCULLOUGH, P.J., and KNECHT, J., concur.